[No. B195724. Second Dist., Div. Seven. Sept: 3, 2008.]

ANTONIO PADILLA, Plaintiff and Appellant, v.
POMONA COLLEGE et al., Defendants and Respondents.

## Counsel

Gordon, Edelstein, Krepack, Grant, Felton & Goldstein, Roger L. Gordon, Vincent F. Bennett and Noah Green for Plaintiff and Appellant.

Horvitz & Levy, Stephen E. Norris, Curt C. Cutting, Peder K. Batalden; Cozen O'Connor and Huey P. Cotton for Defendants and Respondents.

## Opinion

**ZELON, J.**—Plaintiff Antonio Padilla appeals summary judgment in favor of respondents Pomona College and Gordon & Williams General Contractors, Inc., in his action for personal injury and premises liability arising from a worksite injury during the remodel of a dormitory at defendant Pomona College. Plaintiff argues that the trial court erred in finding (1) defendants had delegated the task of making the worksite safe to others, and that they did not exercise any retained control in a manner that affirmatively contributed to plaintiff's injuries; (2) Cal-OSHA[1] regulations did not establish defendants' negligence per se or impose a nondelegable duty on defendants; and (3) that plaintiff's expert testimony lacked foundation. We affirm.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Defendant Pomona College (Pomona) hired Gordon & Williams General Contractors, Inc. (Gordon & Williams), to remodel a dormitory on its college campus. Defendants' summary judgment motion asserted that Gordon & Williams subcontracted with TEG/LVI, plaintiff's employer, for among other

---

[1] California Occupational Safety and Health Act of 1973 (Cal-OSHA; Lab. Code, § 6300 et seq.).

things, the demolition of water pipes in the basement of the dormitory. The water pressure to some of the pipes in the basement area was not shut off because the pipes were needed during the remodeling process.

During the demolition, plaintiff stood on a ladder to demolish an unpressurized cast-iron pipe. A portion of that pipe came loose and fell, striking a pressurized PVC pipe and breaking it. Plaintiff was knocked off his ladder by the gusher of water erupting from the broken PVC pipe and sustained serious physical injuries. The parties do not dispute that the PVC pipe was not to be demolished.

Plaintiff's complaint asserted two theories, negligence and premises liability. He alleged that defendants violated their common law and statutory duties to ensure that there was no water pressure in the pipes in the area where plaintiff was working.

Defendants Pomona and Gordon & Williams moved for summary judgment, contending they had no duty to plaintiff because they did not retain control over the details of the activities causing plaintiff's injuries and engage in any affirmative act that contributed to plaintiff's injuries. (*Hooker v. Department of Transportation* (2002) 27 Cal.4th 198 [115 Cal.Rptr.2d 853, 38 P.3d 1081] (*Hooker*).) Further, they contended that plaintiff's claim was barred because his employer TEG/LVI knew or should have known of the danger presented by the PVC pipe.[2] (*Kinsman v. Unocal Corp.* (2005) 37 Cal.4th 659 [36 Cal.Rptr.3d 495, 123 P.3d 931] (*Kinsman*).)

Defendants presented evidence that it was TEG/LVI's contractual duty to demolish pipes, asbestos, lead, and drywall, and TEG/LVI agreed to protect items that remained in the employees' work area. Prior to the start of the project, Gordon & Williams worked with TEG/LVI to ensure that TEG/LVI understood the scope of the demolition, including which pipes would remain and which would be demolished. Specifically, the architect's plans for the project showed that a PVC pipe would remain in the building during demolition, and would remain pressurized to provide water for work on the project.

---

[2] Defendants also moved for summary adjudication of four issues, contending (1) defendants did not owe a duty of care to plaintiff; (2) worker's compensation was plaintiff's exclusive remedy; (3) TEG/LVI knew or should have known the pressurized pipe was a potential hazard; and (4) defendants fulfilled their duty to make the site safe for demolition. Defendants relied on the same 34 undisputed facts that they asserted in support of their motion for summary judgment.

Gordon & Williams retained codefendant Deel Mechanical to prepare the plumbing system in the dormitory for demolition, and to ensure that the pipes that would not be demolished were cut and capped. Deel marked the pipes to be removed, and redirected temporary piping on the outside of the building. The basement was barricaded to prevent access by Deel and other subcontractors.

The trial court, in a separate summary judgment motion, found Deel "had no duty to prevent the injury that occurred to plaintiff."[3]

At the time of the accident, plaintiff was using TEG/LVI tools and equipment, and was directed in his work by his TEG/LVI supervisor, Armando Takata, who according to defendant's evidence, identified to plaintiff that the PVC pipe was one of the pipes that had been left pressurized. The moving papers provided evidence that Takata expressly advised plaintiff to avoid damaging the pressurized PVC pipe. TEG/LVI's standard demolition procedures for the type of pipe that plaintiff demolished required plaintiff and a coworker to use separate ladders, tie a rope around the midsection of the pipe to be demolished, break the pipe, and lower the pipe to the ground slowly. Plaintiff was not following this procedure at the time of the accident. Defendants, in particular Gordon & Williams, did not supervise plaintiff.

Plaintiff was covered by workers' compensation insurance, and has received benefits from TEG/LVI's insurance carrier.

Plaintiff opposed the motion, contending that (1) Gordon & Williams's failure to depressurize the pipe constituted negligence per se, a breach of its contractual duties, and was contrary to custom and practice; and (2) Gordon & Williams's failure to depressurize the pipe affirmatively contributed to plaintiff's injury.

Plaintiff specifically contended that Gordon & Williams failed to follow Cal-OSHA regulations (Cal. Code Regs., tit. 8, § 1735, subd. (a)),[4] which required utilities to be shut off, capped, or otherwise controlled during demolition, or protected if use was necessary. Plaintiff also contended Gordon & Williams's contract with Pomona College specified that Gordon & Williams was "responsible for initiating, maintaining and

---

[3] The trial court granted Deel's motion for summary judgment. Plaintiff does not appeal from the judgment in favor of Deel.

[4] The regulation provides, "Utility companies shall be notified and all utility service shut off, capped, or otherwise controlled, at the building or curb line before starting demolition, unless it is necessary to use electricity or water lines during demolition. If use is necessary, the utility services shall be relocated or rearranged as necessary and protected from physical damage." (Cal. Code Regs., tit. 8, § 1735, subd. (a) (Regulation 1735(a)).)

supervising all safety precautions and programs in connection with the performance of the Contract" and that Gordon & Williams was to "take reasonable precautions for safety of, and shall provide reasonable protection to prevent damage, injury or loss to . . . employees on the Work and other persons who may be affected thereby." In addition, Gordon & Williams was to "comply with applicable laws, ordinances, rules, regulations . . . bearing on safety of persons or property or their protection from damage, injury or loss" and designate a responsible person whose duty would be the prevention of accidents, in this case, Gordon & Williams's project supervisor, Daniel Williams.

Plaintiff also argued that even under the rule of *Privette v. Superior Court* (1993) 5 Cal.4th 689 [21 Cal.Rptr.2d 72, 854 P.2d 721] (*Privette*), which limited a hirer's liability to an independent contractor's employees, *Hooker, supra*, 27 Cal.4th 198, provided the hirer could nonetheless be liable if its conduct affirmatively contributed to the injuries of the independent contractor's employees. Plaintiff argued that defendants retained control over the worksite and failed to take necessary precautions by depressurizing the pipe, thereby contributing to his injuries.

In particular, plaintiff contended that TEG/LVI did not have control of the water pressure in the PVC pipe, and therefore could not shut it off; Gordon & Williams could have shut the water off to the PVC pipe while the demolition was going on in the basement; following the accident, Gordon & Williams had difficulty shutting the water off, and after the accident placed a ball valve over the pipe to protect it; the plans for the project only showed that the pipe was to "remain," not that it would be pressurized; plaintiff's supervisor did not tell him how to do his job or that the PVC pipe would remain pressurized; his supervisor only told him that pipes marked with red paint would not be demolished, not that they were pressurized, and the pipes in the area where he worked were not marked with red paint; and he demolished the sewer pipe the way he had been trained to do. Plaintiff proffered expert deposition testimony that the accident was the result of Gordon & Williams's failure to comply with custom and practice by shutting off the water before demolition began, and that damage to the PVC pipe was foreseeable.

The trial court granted defendants' motion on the basis that defendants had fully delegated the task of providing a safe work environment to TEG/LVI and they did not exercise any retained control in a manner that affirmatively contributed to plaintiff's injuries. The court found Regulation 1735(a) did not impose a duty on defendants independent of the retained control theory of liability because plaintiff did not establish the regulation imposed a duty on

defendants as opposed to TEG/LVI, or that it was in fact necessary to relocate or shut off the PVC pipe under the circumstances. The court also sustained defendants' objection to plaintiff's expert deposition testimony on the grounds that no foundation had been laid either for the expert's qualification as an expert or for his opinion.[5]

## DISCUSSION

### I. *STANDARD OF REVIEW.*

"[T]he party moving for summary judgment bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 [107 Cal.Rptr.2d 841, 24 P.3d 493].) "Once the [movant] has met that burden, the burden shifts to the [other party] to show that a triable issue of one or more material facts exists as to that cause of action . . . ." (Code Civ. Proc., § 437c, subd. (p)(1); see *Aguilar, supra,* 25 Cal.4th at p. 850.) A triable issue of material fact exists where "the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar, supra,* 25 Cal.4th at p. 850.) Where summary judgment has been granted, we review the trial court's decision de novo, "considering all of the evidence the parties offered in connection with the motion (except that which the trial court properly excluded) and the uncontradicted inferences the evidence reasonably supports." (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476 [110 Cal.Rptr.2d 370, 28 P.3d 116].)

### II. *PLAINTIFF CANNOT ESTABLISH THAT DEFENDANTS RETAINED CONTROL OVER THE PVC PIPE AND AFFIRMATIVELY CONTRIBUTED TO THE ACCIDENT.*

Plaintiff contends that defendants remained in sole control of the water pressure in the subject pipe before, during and after the accident, that this retained control affirmatively contributed to the accident, and that defendants were therefore liable. (See *Hooker, supra,* 27 Cal.4th 198.) We disagree.

"At common law, a person who hired an independent contractor generally was not liable to third parties for injuries caused by the contractor's negligence in performing the work." (*Privette, supra,* 5 Cal.4th at p. 693.) *Privette* addressed one exception to the common law rule, the "peculiar risk

---

[5] The court noted, "I didn't see anything by way of offer of proof from any competent witness that this section applied in this circumstance, that this statute was a Cal-OSHA requirement and applied in this instance . . . ."

doctrine,"[6] under which the hirer of an independent contractor to perform inherently dangerous work could be liable for injury to others resulting from the contractor's negligent performance of the work. (5 Cal.4th at p. 691.) *Privette* held that the peculiar risk doctrine did not apply to employees of the independent contractor injured on the job because they could recover worker's compensation for their injuries. (*Id.* at p. 701.) "[I]n the case of on-the-job injury to an employee of an independent contractor, the workers' compensation system of recovery regardless of fault achieves the identical purposes that underlie recovery under the doctrine of peculiar risk." (*Ibid.*)

■ Subsequently, in *Toland v. Sunland Housing Group, Inc.* (1998) 18 Cal.4th 253, 264 [74 Cal.Rptr.2d 878, 955 P.2d 504], the court held that *Privette* applies regardless of whether recovery is sought under the theory that the hirer failed to provide for special precautions in the contract (Rest.2d Torts, § 413),[7] or the hirer is liable for the contractor's negligence in spite of providing in the contract that the contractor take special precautions (Rest.2d Torts, § 416).[8] "In either situation, it would be unfair to impose liability on the hiring person when the liability of the contractor, the one primarily responsible for the worker's on-the-job injuries, is limited to providing workers' compensation coverage."[9] (*Toland v. Sunland Housing Group, Inc., supra,* at p. 267.)

In *Hooker, supra,* 27 Cal.4th 198, the Supreme Court extended the rationale of *Privette* to the doctrine of negligent exercise of retained control under the Restatement Second of Torts, section 414.[10] Following the rationale of *Privette* that it would be unfair to impose liability on the hiring person when the contractor, the one primarily responsible for the worker's on-the-job injuries, is limited to providing workers' compensation coverage, *Hooker* concluded that "the imposition of tort liability on a hirer should depend on whether the hirer *exercised* the control that was retained in a manner that

---

[6] A "peculiar risk" is "a special, recognizable danger arising out of the work itself." (Rest.2d Torts, § 413, com. b, p. 386.)

[7] The Restatement Second of Torts, section 413 provides that a person who hires an independent contractor but fails to specify in the contract what safety precautions must be taken to avert the risk of the particular work, can be liable if the contractor's negligent performance of the work causes injury to others.

[8] The Restatement Second of Torts, section 416 provides that even where the hirer has provided for special precautions in the contract, the hirer can be liable if the contractor fails to exercise reasonable care to take such precautions and causes injury to others.

[9] *Privette* also bars a negligent hiring claim against the hirer of an independent contractor. (*Camargo v. Tjaarda Dairy* (2001) 25 Cal.4th 1235, 1238 [108 Cal.Rptr.2d 617, 25 P.3d 1096].)

[10] The Restatement Second of Torts, section 414 provides, "One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care."

*affirmatively* contributed to the injury of the contractor's employee." (*Hooker,* *supra,* at p. 210.) Thus, although in the case before it the plaintiff had established the defendant hirer retained control over safety conditions at the worksite, the plaintiff had not established that such retained control was exercised in a manner that affirmatively contributed to the plaintiff's injuries. (*Id.* at p. 215.) *Hooker* pointed out that a hirer could be liable for omissions as well as affirmative conduct. "There will be times when the hirer will be liable for its omissions. For example, if the hirer promises to undertake a particular safety measure, then the hirer's negligent failure to do so should result in liability if such negligence leads to an employee injury." (*Id.* at p. 212, fn. 3.)

As noted in *Kinsman,* "[a] useful way to view the [*Privette*] cases is in terms of delegation. . . . [I]n *Privette* and its progeny, we have concluded that, principally because of the availability of workers' compensation, [the] policy reasons for limiting delegation do not apply to the hirer's ability to delegate to an independent contractor the duty to provide the contractor's employees with a safe working environment." (*Kinsman, supra,* 37 Cal.4th at p. 671.)

Here, plaintiff contends that defendants, who retained control over the PVC pipe, should have depressurized, rearranged, or relocated the pipe before the project began, or at least temporarily while demolition was taking place in the basement. In support of his arguments, plaintiff relies on *Ray v. Silverado Constructors* (2002) 98 Cal.App.4th 1120 [120 Cal.Rptr.2d 251], in which the court found factual issues existed with respect to the issue of retained control. The plaintiff's decendent in *Ray* was working on the construction of a bridge when high winds began to blow construction materials on the roadway, which had remained open. The decendent used his truck to block traffic while other workers helped him secure materials; after clearing debris from traffic lanes, he was struck on the back of the head with a wood deck form and killed. (*Id.* at p. 1124.) His widow argued the general contractor should be liable because it retained control over the roadway, including the power to close it during construction, and failed to exercise that power nonnegligently. (*Id.* at pp. 1124–1225.) In particular, she pointed to contract provisions in which the general contractor agreed to take all necessary precautions to protect the traveling public from injuries. (*Id.* at p. 1130.) *Ray* concluded this contractual provision constituted retained control. (*Id.* at p. 1134.)

On the issue of whether the general contractor's failure to close the roadway affirmatively contributed to the decedent's injuries, the *Ray* court conducted a duty, breach and causation analysis. *Ray* concluded that the

general contractor had general duties to keep the roadway clear of hazards. However, issues of fact existed on breach and causation, namely: whether the general contractor's exercise of that retained control affirmatively contributed to the death of the plaintiff's decedent, including whether the general contractor knew of falling debris; or whether high winds made falling debris foreseeable; whether the general contractor had been requested by the subcontractor to barricade the street; whether had the roadway been blocked, the decedent would not have taken action in blocking it to make it safe for others. (*Ray v. Silverado Constructors, supra,* 98 Cal.App.4th at pp. 1134, 1137–1138.)

Here, in contrast, plaintiff cannot show defendants' retention of control over the PVC pipe affirmatively contributed to his injuries.[11] Although ultimately only defendants had the ability to physically turn off the pipe once the accident occurred, this control does not rise to the level of control necessary to impose liability under *Privette.* Under *Privette,* defendants could and did delegate safety measures to TEG/LVI. Further, the evidence does not disclose that TEG/LVI made any request to turn off the water, which defendants refused, or that defendants prevented TEG/LVI from setting up an emergency valve on the pipe in the event of an accident. These facts distinguish this case from *Ray,* where the general contractor retained complete control of the roadway.

## III. *PADILLA CANNOT ESTABLISH TRIABLE ISSUES OF FACT UNDER REGULATION 1735(a).*

Plaintiff makes two arguments based upon Regulation 1735(a). First, he contends that Regulation 1735(a) imposed a nondelegable duty on defendants to depressurize the PVC pipe prior to demolition in the basement, and second, that defendants' violation of Regulation 1735(a) established negligence per se. We conclude that under the circumstances, Regulation 1735(a) did not establish a nondelegable duty on Pomona or Gordon & Williams, and that plaintiff cannot establish negligence per se based upon the regulation.

### A. *Plaintiff Cannot Establish Regulation 1735(a) Imposes a Nondelegable Duty on Defendants.*

The nondelegable duty doctrine addresses an affirmative duty imposed by reason of a person or entity's relationship with others. Such a duty cannot be avoided by entrusting it to an independent contractor. (*Felmlee v.*

---

[11] For purposes of analysis under *Privette,* "there is no legal distinction between a general contractor and a landowner who hires independent contractors; both are 'hirers' within the meaning of the doctrine." (*Michael v. Denbeste Transportation, Inc.* (2006) 137 Cal.App.4th 1082, 1097 [40 Cal.Rptr.3d 777].)

*Falcon Cable TV* (1995) 36 Cal.App.4th 1032, 1036 [43 Cal.Rptr.2d 158].) Nondelegable duties may arise when a statute provides specific safeguards or precautions to insure the safety of others. (*Id.* at pp. 1038–1039; see also Rest.2d Torts, § 424.[12])

In support of his argument that Regulation 1735(a) created a nondelegable duty as to defendants, plaintiff relies on *Evard v. Southern California Edison* (2007) 153 Cal.App.4th 137 [62 Cal.Rptr.3d 479] (*Evard*), where the plaintiff was injured while working on a billboard replacing an outdoor advertisement. The plaintiff was using a metal pole, which came into contact with defendant Southern California Edison's overhead utility lines, causing the plaintiff to fall from the billboard and suffer severe injuries. (*Id.* at pp. 142–143.) The plaintiff was aware of the utility lines, and that company policy required him to hook his harness at all times he was on the billboard; however, the plaintiff did not hook his harness to the ladder he stood on at the top of the billboard. At the time of the accident, the plaintiff's employer had fiberglass poles for use if the employees believed the billboard was too close to power lines. (*Id.* at p. 143.)

The regulation at issue in *Evard* required that "[a]ll outdoor advertising structure platforms, over 7-1/2 feet above ground or other surface, which are not provided with standard guardrails and where employees' work requires horizontal movement, shall be provided with a horizontal safety line. [¶] Exception: When the employee's safety belt or harness lanyard is secured to the special purpose poster ladder." (*Evard, supra,* 153 Cal.App.4th at p. 146.) *Evard* concluded that the regulation imposed a nondelegable duty, and that under the *Hooker* test, whether the employer's failure to comply with the regulation was an omission that affirmatively contributed to the injuries created a triable issue of fact.[13] (153 Cal.App.4th at p. 147.)

█ Notwithstanding *Evard*'s conclusion that the regulation at issue imposed a nondelegable duty, we do not agree with plaintiff's inference from that case that in every instance Cal-OSHA regulations impose a nondelegable duty. While a nondelegable duty may arise when a statute or regulation requires specific safeguards or precautions to insure others' safety (*Evard, supra,* 153 Cal.App.4th at p. 146; see also *Felmlee, supra,* 36 Cal.App.4th at

---

[12] That section provides, "One who by statute or administrative regulation is under a duty to provide specified safeguards or precautions for the safety of others is subject to liability to the others for whose protection the duty is imposed for harm caused by the failure of a contractor employed by him to provide such safeguards or precautions." (Rest.2d Torts, § 424.)

[13] "Affirmative contribution" occurs where the hirer is " 'actively involved in, or asserts control over, the manner of performance of the contracted work. [Citation.] Such an assertion of control occurs, for example, when the principal employer *directs* that the contracted work be done by use of a certain mode or otherwise interferes with the means and methods by which the work is to be accomplished. [Citations.]' [Citation.]" (*Hooker, supra,* 27 Cal.4th at p. 215.)

p. 1038 [under *Privette,* a worker may sue the general contractor for specific, nondelegable duties in certain cases]), it is the nature of the regulation itself that determines whether the duties it creates are nondelegable.

As a result, to determine whether Regulation 1735(a) imposes a nondelegable duty, we must look at the language of the regulation itself. Nothing in Regulation 1735(a) mandates that it imposes safety precautions that cannot be delegated from the landowner to the general contractor to subcontractors, as was done in this case. The regulation requires that "[u]tility companies shall be notified and all utility service shut off, capped, or otherwise controlled, at the building or curb line before starting demolition, unless it is necessary to use electricity or water lines during demolition. If use is necessary, the utility services shall be relocated or rearranged as necessary and protected from physical damage." The language, however, nowhere indicates who must perform these acts and does not expressly place the obligation on the landowner. In contrast, the regulation at issue in *Evard* pertained to the condition of the landowner's property, and required the owner to maintain a protective railing on the billboard at all times. This ongoing duty required the guardrails to be in place regardless of whether work was being done on the billboard. The regulation, in other words, imposed a permanent obligation on the owner with respect to the condition of the property; no one but the landowner was in a position to ensure that condition. Here, Regulation 1735(a) pertained solely to the preparation of the worksite when specific work was being done; that is, at a time when contractors were necessarily present. Therefore, there is no basis in Regulation 1735(a) to conclude the duties could not be delegated.

■    Even if there were such a duty, the liability of a hirer for injury to employees of independent contractors caused by breach of a nondelegable duty imposed by statute or regulation remains subject to the *Hooker* test. (*Madden v. Summit View, Inc.* (2008) 165 Cal.App.4th 1267, 1280–1281 [81 Cal.Rptr.3d 601] [safety regulations are only admissible in actions by employees of subcontractors against general contractors where other evidence establishes that the general contractor affirmatively contributed to the employee's injuries];[14] *Evard, supra,* 153 Cal.App.4th at p. 147.) Under that test, the hirer will be liable if its breach of regulatory duties affirmatively contributes to the injury of a contractor's employee. (*Park v. Burlington Northern Santa Fe Railway Co.* (2003) 108 Cal.App.4th 595, 609–610 [133 Cal.Rptr.2d 757]; see also *Barclay v. Jesse M. Lange Distributor, Inc.* (2005) 129 Cal.App.4th 281, 298 [28 Cal.Rptr.3d 242].)

---

[14] *Elsner v. Uveges* (2004) 34 Cal.4th 915, 937 [22 Cal.Rptr.3d 530, 102 P.3d 915], which held that safety regulations may be admissible to establish a standard or duty of care, found the admission of Cal-OSHA regulations does nothing to expand the general common law duty of care.

■ Hence, in any event, plaintiff is required to show that defendants' conduct affirmatively contributed to his injury. Because there is no nondelegable duty, plaintiff must show conduct other than an asserted failure to comply with the regulation. All of the evidence on which plaintiff relies, however, pertains to the regulation. First, although plaintiff argues that the PVC pipe could have been depressurized prior to his work, plaintiff has not brought forward evidence that establishes a disputed issue of fact as to the necessity of pressurization. As to the second portion of the regulation, the duty to relocate, rearrange, or protect, the record contains no facts showing that it was possible to relocate or rearrange the pipe, which was not to be demolished. The only portion of Regulation 1735(a) that could support liability is a failure to protect the pipes during demolition, and on that issue, there is no disputed evidence that defendants acted in a manner affirmatively contributing to plaintiff's injuries. The plans for the demolition identified those pipes that would remain; Gordon & Williams worked with TEG/LVI prior to the project to ensure TEG/LVI understood the scope of the demolition, including the pipes not subject to demolition, and those which would remain pressurized; and Deel marked the pipes to be removed, and redirected temporary pipes out of the building. Given the standard manner of demolition (lowering the demolished pipes to the floor with a rope), the method of protection was to mark pressurized pipes. Although plaintiff asserts he did not see the marking on the PVC pipe indicating it was pressurized, this fact alone cannot create a triable issue of fact that defendants' conduct affirmatively contributed to his injuries. The trial court properly found that Deel discharged its duties in preparing the basement area for demolition. Absent evidence that is not found in this record that Pomona or Gordon & Williams entered the basement area and in any way altered or interfered with the safety measures or directed plaintiff's work, plaintiff cannot establish liability.[15]

### B. *Plaintiff Cannot Use Regulation 1735(a) to Establish Negligence Per Se.*

■ Evidence Code section 669, which codifies the common law negligence per se rule, allows proof of a statutory violation to create a presumption of negligence in certain circumstances.[16] (*Elsner v. Uveges, supra,* 34

---

[15] Plaintiff further relies on Labor Code section 6400 (citations may be issued for employee exposure to hazards on worksites) and section 6407 (employers shall comply with occupational safety and health standards) for the proposition that Regulation 1735(a) was applicable. These statutes, which provide separate mechanisms for the enforcement of workplace safety, neither enhance nor detract from our analysis of Regulation 1735(a).

[16] Evidence Code section 669 provides, "(a) The failure of a person to exercise due care is presumed if: [¶] (1) He violated a statute, ordinance, or regulation of a public entity; [¶] (2) The violation proximately caused death or injury to person or property; [¶] (3) The death or injury resulted from an occurrence of the nature which the statute, ordinance, or regulation was

Cal.4th at p. 920.) In the context of actions for negligence against third parties, *Elsner* held that the 1999 amendments to Labor Code section 6304.5 permitted the introduction of Cal-OSHA regulations to establish a duty or the standard of care to the same extent as any other regulation or statute, whether against the plaintiff's employer or a third party. (34 Cal.4th at pp. 935–936.)

■ Under the negligence per se rule, a presumption of negligence arises from the violation of a statute that was enacted to protect a class of persons, of which the plaintiff is a member, against the type of harm which the plaintiff suffered as a result of the violation of the statute. (*Urhausen v. Longs Drug Stores California, Inc.* (2007) 155 Cal.App.4th 254, 267 [65 Cal.Rptr.3d 838].) The first two requirements of Evidence Code section 669, subdivision (a) are questions of fact, but may be decided as questions of law where there are no factual disputes. (*Onciano v. Golden Palace Restaurant, Inc.* (1990) 219 Cal.App.3d 385, 394 [268 Cal.Rptr. 96].) The final two requirements are questions of law for the court and cannot be the basis of a finding a triable issue of fact exists. (*Cade v. Mid-City Hospital Corp.* (1975) 45 Cal.App.3d 589, 596–597 [119 Cal.Rptr. 571].)

Here, plaintiff cannot establish negligence per se. On the fourth element of the doctrine, plaintiff argues, without dispute, that he was a member of the class the statute was designed to protect.[17] On the first prong, he asserts the same arguments he made in support of his contention that Regulation 1735(a) imposed a nondelegable duty. He also contends the trial court erred in requiring expert testimony to support his contention Regulation 1735(a) applied.

For the reasons already discussed, Regulation 1735(a) imposes no duty on these defendants unless their conduct affirmatively contributed to plaintiff's injury. The assertion that plaintiff did not see the markings, in the face of defendants' factual showing that Deel properly prepared the area for demolition, does not create factual issues whether defendants

designed to prevent; and [¶] (4) The person suffering the death or the injury to his person or property was one of the class of persons for whose protection the statute, ordinance, or regulation was adopted."

[17] There can be no dispute the Cal-OSHA regulation pertains to workplace safety, thereby satisfying the third element of Evidence Code section 669 (whether the death or injury resulted from an occurrence the regulation was designed to prevent). (*Salwasser Manufacturing Co. v. Municipal Court* (1979) 94 Cal.App.3d 223, 233 [156 Cal.Rptr. 292] [Cal-OHSA's purpose is to provide a safe and healthy environment for California workers].)

affirmatively contributed to the accident by directing the manner in which plaintiff went about his work.[18]

## IV. *PLAINTIFF CANNOT ESTABLISH THAT DEFENDANTS FAILED TO DISCLOSE A KNOWN HAZARDOUS CONDITION OF THE PROPERTY.*

■ In *Kinsman, supra,* 37 Cal.4th 659, the Supreme Court addressed the issue of a landowner's liability to a contractor's employees resulting from hazardous conditions on the property in light of *Privette.* In the case of the obvious hazard, under *Privette* the landowner can delegate the responsibility of safety precautions to the contractor, and the landowner will not be liable for injuries to the contractor for the contractor's failure to take such precautions. (*Kinsman, supra,* at pp. 673–674.)

However, where the hazard is concealed from the contractor, but known to the landowner, the landowner cannot effectively delegate to the contractor responsibility for the safety of its employees if it has not communicated crucial information to the contractor. Thus, *Kinsman* concluded that "the usual rules about landowner liability must be modified, after *Privette,* as they apply to a hirer's duty to the employees of independent contractors." (*Kinsman, supra,* 37 Cal.4th at p. 674.)

*Kinsman* rejected the Court of Appeal's conclusion that liability would only attach to the landowner in the case of retained control and affirmative contribution. "Rather, . . . the hirer as landowner may be independently liable to the contractor's employee, even if it does not retain control over the work, if: (1) it knows or reasonably should know of a concealed, preexisting hazardous condition on its premises; (2) the contractor does not know and could not reasonably ascertain the condition; and (3) the landowner fails to warn the contractor." (*Kinsman, supra,* 37 Cal.4th at pp. 674–675.)

Here, the hazardous condition plaintiff asserts is the pressurized PVC pipe. Under *Kinsman,* defendants are not liable because the pressurization in the pipe was not concealed, but fully disclosed to plaintiff's employer. TEG/LVI knew of the pipe and failed to take necessary precautions to protect it from harm during the demolition process.

---

[18] Because Regulation 1735(a) cannot be used to establish negligence per se, we need not consider the issue of whether the trial court erred in requiring expert testimony on the issue.

## DISPOSITION

The judgment of the superior court is affirmed. Respondents are to recover their costs on appeal.

Perluss, P. J., and Jackson, J., concurred.

Appellant's petition for review by the Supreme Court was denied December 10, 2008, S167482. Kennard, J., was of the opinion that the petition should be granted.