Filed 10/5/23  Torres v. Dateland Construction Co. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| RUDY RAUL TORRES, | |
| Plaintiff and Appellant, | E078625 |
| v. | (Super.Ct.No. PSC2001806) |
| DATELAND CONSTRUCTION COMPANY, INC., | OPINION |
| Defendant and Respondent. | |

APPEAL from the Superior Court of Riverside County. Richard Oberholzer, Judge. Affirmed.

Haffner Law, Joshua H. Haffner, and Trevor Weinberg, and Alfredo Torrijos for Plaintiff and Appellant.

Berman, Berman, Berman, Schneider & Lowary, Mark E. Lowary, Kelly M. Henry, and Gina M. Genatempo for Defendant and Respondent.

1

A construction worker fell into a shallow trench while carrying a heavy wood form across a construction site managed by his employer, a general contractor. He sued the subcontractor who excavated the trench under theories of premise liability and negligence. The trial court granted summary judgment on both causes of action because the subcontractor had no duty to warn employees where the employee could easily have avoided the open and obvious condition, and no Cal-OSHA regulations or company policies required warnings for a trench of the type the subcontractor built. We agree with the trial court and also conclude premises liability does not apply in this suit against a subcontractor. We therefore affirm the judgment.

# I

# FACTS

On June 21, 2018, plaintiff and appellant Rudy Raul Torres was working for Sun Country Builders (Sun Country) as a laborer and carpenter at a construction site staffed by multiple contractors, all involved in a project called Villa Hermosa Phase II in Indio. Torres suffered injuries that day when he stepped onto a board laid across an open fire riser trench on the site. The board gave way, and Torres fell partially into the trench.

Torres filed a complaint stating causes of action for general negligence and premises liability against a subcontractor who performed electrical work at the site, and later amended the complaint to add a second subcontractor, respondent Dateland Construction Company, Inc. (Dateland), as a defendant. After discovery, Dateland filed a motion seeking summary judgment, which it supported with a declaration by a

2

construction industry expert; Torres's interrogatory responses; a declaration by its project manager; a statement of undisputed facts; and portions of the deposition transcripts of Torres, three people at the site on the day of the injury, and the person designated the most knowledgeable at Dateland.

Torres opposed summary judgment and submitted a separate statement of material facts, a copy of the contract between Sun Country and Dateland, a copy of the construction site report about Torres's injury, portions of Torres's depositions, portions of the deposition of the employee Dateland designated as its person most knowledgeable, and a declaration from another construction industry expert witness.

Because this is an appeal from an order granting summary judgment, we refer to those sources in setting out the facts below.

Sun Country served as the general contractor for the Villa Hermosa Phase II project, and Dateland worked as one of the subcontractors. Dateland's job was "to provide all water, fire suppression system distribution, storm drain and sanitary sewer material and installation work." It agreed to have a full-time supervisory presence and to provide Sun Country with its safety policies and procedures, which had to "meet or exceed Cal OSHA regulations."

As part of its work, Dateland dug a fire riser trench on June 20, 2018 and left it there unattended the next day, when its workers were elsewhere at the site. The trench would have to be left open for inspection by a fire marshal before a concrete kicker could

be installed. Such inspections are a routine part of fire riser installation, and it typically takes several days for the inspection. The inspection was set for June 22.

On the morning of June 21, Torres was building concrete forms and moving them across the jobsite. Torres was working alone in the middle of the site. Two other Sun Country employees were doing the same work together. Those employees took a longer route to the front of the building, while Torres took a shorter, more direct route. Torres carried his concrete form—a single wood panel weighing between 25 to 35 pounds—on his right shoulder. Torres says he was walking fast when he stepped on a wood plank, which collapsed. He says part of his left leg went into the trench, and the wood concrete form fell on him. He said he did not see the open trench because the wood plank obscured it and there were no warning signs or barriers.

Photographs taken after the incident show a trench with wood planks partially fallen into it.

 

It is unknown who placed the board over the trench. Sun Country was the only entity using lumber boards of the sort left over the trench, but it had a policy against building bridges out of boards to allow access over trenches. Daryl McFarland, at the time a Vice President for Sun Country charged with overseeing project operations, reported that a Sun Country employee said he saw Torres place the boards across the trench, but Torres denied that accusation.

At his deposition, Torres testified the trench was around five- to six-feet deep but said he did not know its length. Dateland objected to Torres's estimate. It said it routinely digs fire riser trenches to a depth of about two feet and no more than three feet and had done so at this site. Based on photos of the trench, McFarland estimated it was 2 feet deep. Everardo Ortiz, an assistant superintendent in charge of jobsite safety who saw the trench after the incident, testified it was about two feet deep. He said the area did not require caution tape "because it wasn't that deep of a trench," and tape was required only

for trenches at least four feet deep. Ortiz conducted June 20 and 21 safety inspections that included the fire riser trench and noted no safety issues. The safety inspection on June 21 occurred at 10:00 a.m., after Torres's fall, but did not note the incident. Ortiz said he should have included in the safety report that boards had been placed over the fire riser trench, a fact noted in the incident report.

Dateland designated Dennis Chuck, the project manager, as its "Person Most Knowledgeable." He submitted a declaration offering to testify that he personally oversaw the jobsite work. He said, "Dateland was contracted only for the installation of fire risers which required trenches which are uniformly no more than two feet deep, and approximately two (2) feet wide. . . . The trenches created by Dateland which were present on the date of the incident were all that same size." He said Dateland had prepared an exemplar fire riser trench to allow its proposed construction industry expert to inspect the trench. He said he observed the exemplar, and it was prepared in the same dimensions and to the same standards as the trenches at the site, consistent with Dateland's custom. He testified the trench at the site and the exemplar trench were dug consistent with Sun Country's safety standards, and there were no safety requirements under either OSHA safety standards or Sun Country's safety standards which required signs, caution tape, cover, or bridging over the trench. However, at his deposition, Chuck responded affirmatively when asked whether Dateland "put any warning signs near its trenches when the trenches have not been filled yet." He said, "There would be caution

6

tape all the way around the trench if [Dateland] leaves the trench open and no workers are there."

Dateland proffered Mike Brown as an expert on practices in the construction industry, and he submitted a declaration offering his opinions on construction procedures for the kind of concrete forms, risers, and conduits being installed at the Villa Hermosa Phase II project. He offered to testify that the documents and photographs from the project, together with industry standards, do not support Torres's claim that the fire riser trench was 5 feet deep or more. Brown inspected an exemplar trench prepared by Dateland, which he was told had been prepared in the same dimensions and using the same standards as the fire riser trenches Dateland built at the project. Brown personally measured the exemplar trench and compared it to site photos. His measurements confirmed the trench was between two-and three- feet deep. Brown also offered to testify that a fire riser trench does not exceed the two- to three-foot depth as a matter of custom, practice, and necessity because other construction items such as water lines are required to run deeper. He opined that if Torres fell into a trench deeper than three feet, it was not a trench for a fire riser.

Brown offered to testify that leaving fire riser trenches open for a few days prior to inspection was common, understood by workers, and not a violation of any safety standards. "Open trenches during the course of construction are common due to the requirements by the city and the code to have access to the items in the trench by city inspectors to perform their inspection unimpeded. That the trench was left open overnight

or even for a few days is not uncommon, and is an expected occurrence on a construction site should have been common knowledge for any workers on site." He said no Cal-OSHA or the California Building Code provision, and no industry standard, requires signs, barricades, or fall protection for trenches less than five feet deep if the projects are not open to the public. He said caution tape falls under the category of signs. Cal-OSHA Construction Safety Orders at sections 1540 and 1541 define excavations and general safety requirements, and they require fall protection only if an excavation is at least six feet deep and wider than 30 inches. Brown concluded, "there are no Cal-OSHA standards or requirements from any source for signage, caution tape, fencing or barricades or other warnings for the trench . . . . Industry standard required a trench of the size and depth that Dateland created, and it was necessary and appropriate to wait for authorities to inspect the trench(es) before completing any further work on same."

In moving for summary judgment, Dateland argued it could not be found liable for general negligence because it had no duty to warn employees on site of a two- to three-foot trench, and the evidence was insufficient to establish the trench was 6 feet deep or more, the Cal-OSHA threshold for a duty to warn and to build bridging. Dateland argued it could not be found liable for premises liability because it did not control the worksite, and because the trench was an open and obvious condition for workers.

Against summary judgment on the negligence claim, Torres argued Dateland had breached a duty to protect those at the site by putting up barriers around the trench. He argued the duty arose from Cal-OSHA regulations and Dateland's policies. He argued

8

further that Cal-OSHA regulations required Dateland to build walkways with guardrails if the trench was more than six feet deep and contended that Torres's testimony created a factual dispute on the depth of the trench. Torres also argued Dateland breached its duty to have a competent person conduct a daily inspection, as required by Cal-OSHA and the contractors' contract.

Against summary judgment on the premises liability claim, Torres argued there was a factual dispute as to whether the trench was an open and obvious condition. He argued a jury could find Dateland liable if Torres's injury was foreseeable, even if the condition was open and obvious. Finally, he argued Dateland could be liable for premises liability despite not being the owner of the property on the basis that it exercised sufficient control over the area as the party who created and failed to correct the condition which foreseeably led to his injury.

The trial court heard argument and entered an order granting the motion. The court held Dateland had no duty to warn Torres or otherwise protect workers from the trench, and found the trench to be an open and obvious condition. The court held there was no material issue of fact on the depth of the trench because significant visual evidence contradicted Torres's testimony, the only evidence the trench was more than three feet deep. The court held it was undisputed that the trench was open and obvious and that Torres was not compelled to encounter the condition.

## II

## ANALYSIS

Torres argues the trial court erred by granting summary judgment for Dateland on both causes of action by concluding it had no duty to warn or protect workers like him. A trial court properly grants summary judgment where no triable issues of material fact exist, and the moving party is entitled to judgment as a matter of law. (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476; see also Code Civ. Proc., § 437c, subd. (c).) We review the trial court's grant of summary judgment de novo, considering all the evidence the parties offered—except what the court properly excluded—and the uncontradicted inferences the evidence reasonably supports. (*Merrill*, at p. 476.)

Torres asks us to hold Dateland had a duty to protect him. "The existence and scope of a duty are questions of law for the court's determination, and foreseeability is a critical factor in the analysis. When foreseeability is analyzed to determine the existence or scope of a duty, foreseeability is also a question of law." (*Ericson v. Federal Express Corp.* (2008) 162 Cal.App.4th 1291, 1300.)

A. *Premises Liability and Common Law Negligence*

Torres argues Dateland can be held liable under a premises liability theory because, though not the owners of the property, it had sufficient control over the premises when excavating under the terms of its agreement to take on a duty of care and a duty to warn typically reserved for owners, lessees, or general contractors.

10

"Premises liability '"is grounded in the possession of the premises and the attendant right to control and manage the premises'"; accordingly, '"mere possession with its attendant right to control conditions on the premises is a sufficient basis for the imposition of an affirmative duty to act."' [Citations.] But the duty arising from possession and control of property is adherence to the same standard of care that applies in negligence cases." (*Kesner v. Superior Court* (2016) 1 Cal.5th 1132, 1158 (*Kesner*).) "'The proper test to be applied to the liability of the possessor of land . . . is whether in the management of his property he has acted as a reasonable [person] in view of the probability of injury to others.'" (*Rowland v. Christian* (1968) 69 Cal.2d 108, 119 (*Rowland*), partially superseded by statute on other grounds as stated in *Issakhani v. Shadow Glen Homeowners Assn., Inc.* (2021) 63 Cal.App.5th 917, 926.) We are not convinced Torres has succeeded in stating a premises liability cause of action, much less in creating a triable issue of fact as to its elements.

Premises liability is a negligence theory an injured plaintiff can use to reach the property owner, or other person who controls the property, for failing to exercise due care in managing activities on the premises or warning of hidden defects. (See, e.g., *Kinsman v. Unocal Corp.* (2005) 37 Cal.4th 659 [landowner may be liable to a contractor's employee if it knew or should have known of a latent preexisting hazardous condition, the contractor did not know and could not have reasonably discovered the condition, and the landowner failed to warn of the condition]; *Beauchamp v. Los Gatos Golf Course* (1969) 273 Cal.App.2d 20 [golfer sued golf course for injuries from falling on a slippery

11

cement surface on the golf course].) In construction litigation, these cases often arise when a subcontractor's employee seeks to prove liability against the general contractor, who, though not the owner of the property, exercises substantial control. (E.g., *Padilla v. Pomona College* (2008) 166 Cal.App.4th 661 [subcontractor's employee sued property owner and general contractor].)

Civil Code section 1714, subdivision (a), the source of these claims, provides "[e]veryone is responsible, not only for the result of his or her willful acts, but also *for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property* or person, except so far as the latter has, willfully or by want of ordinary care, brought the injury upon himself or herself." (Italics added.)

This case, as alleged and as established by the evidence, does not fit this theory of negligence liability. Here, an employee of a *general* contractor is suing a *subcontractor* for unsafe conditions the subcontractor *created* on part of the jobsite. Torres has not alleged or shown that Dateland caused his injury "by his or her want of ordinary care or skill in the management of [its] property," but rather that it caused his injury by actions in working at the jobsite. That is not a claim of premises liability at all, but rather one of simple negligence. We would affirm the trial court's grant of summary judgment on the premises liability cause of action on that basis alone.

However, even assuming, as the trial court did, that premises liability principles apply, we conclude Dateland had no duty to warn Torres and other workers on site of the danger posed by the fire riser trench. Premises liability is a form of negligence. A

plaintiff must show the defendant had a legal duty of care, breached that duty, and the breach proximately caused an injury. (*Kesner*, *supra*, 1 Cal.5th at p. 1158.) Thus, our analysis of the common law duty applies not just to Torres's negligence cause of action, but also to his premises liability cause of action, if available against a subcontractor.

Whether a duty should be imposed depends on policy considerations known as the *Rowland* factors, which include the foreseeability of harm to the plaintiff and the burdens of imposing the duty. (*Rowland*, *supra*, 69 Cal.2d at pp. 112-113.) The determination of whether a duty applies is made at the general level of a category of cases; it is not about the particular facts of a case. (*Kesner*, *supra*, 1 Cal.5th at pp. 1143-1144.)

"Foreseeability of harm is typically absent when a dangerous condition is open and obvious. [Citation.] 'Generally, if a danger is so obvious that a person could reasonably be expected to see it, the condition itself serves as a warning, and the landowner is under no further duty to remedy or warn of the condition.' [Citation.] In that situation, owners and possessors of land are entitled to assume others will 'perceive the obvious' and take action to avoid the dangerous condition. [Citation.] [¶] An exception to this general rule exists when 'it is foreseeable that the danger may cause injury despite the fact that it is obvious (e.g., when necessity requires persons to encounter it).' [Citation.] In other words, while the obviousness of the condition and its dangerousness may obviate the landowner's duty to remedy or warn of the condition in some situations, such obviousness will not negate a duty of care when it is foreseeable that, because of

13

necessity or other circumstances, a person may choose to encounter the condition."

(*Jacobs v. Coldwell Banker Residential Brokerage Co.* (2017) 14 Cal.App.5th 438, 447.)

Here, we agree with the trial court that a fire riser trench falls into the general category of an open and obvious condition for which harm is not foreseeable for purposes of the duty. An open fire riser trench is an ordinary feature of a construction jobsite and is recognized as a hazard by workers at a jobsite. Dateland contracted to build fire trench risers, which it is uncontested are standard in the construction industry. Dateland's expert explained "[o]pen trenches during the course of construction are common due to the requirements by the city and the code to have access to the items in the trench by city inspectors to perform their inspection unimpeded. That the trench was left open overnight or even for a few days is not uncommon, and is an expected occurrence on a construction site should have been common knowledge for any workers on site." The parties agreed it was uncontested that everyone at the jobsite, including Torres, understood the trench would have to be left open for inspection by a fire marshal, and such inspections are a routine part of fire riser installation. Torres, who was an experienced construction worker, acknowledged at his deposition that he was aware of the presence of open trenches on the jobsite and was aware some of the trenches had to be left open to allow for inspections. The trench therefore falls into the general category of an open and obvious condition for which there is no duty to warn.

Torres argues he was compelled to encounter the hazard to allow him to perform his work, but the uncontested evidence is to the contrary. In deposition testimony, Torres

said he was building concrete forms that weighed between 25 and 35 pounds and moving them on his own from one end of the jobsite to another. He said the accident occurred while he was walking fast, carrying the extra weight of the form, and stepped on a wood plank which crossed the fire riser trench. The plank collapsed, part of his left leg went into the trench, and the concrete form fell on top of him. Torres encountered the trench only because he took a shortcut to his destination. The two other Sun Country employees who were doing the same work took a longer route around the trenches. In view of these facts, the trial court correctly concluded the injury Torres suffered, though not unimaginable, was not foreseeable for purposes of a necessity exception to the absence of a duty to warn of open and obvious conditions.

The remaining *Rowland* factors do not warrant imposing a duty on Dateland. There is no doubt Torres in fact suffered an injury. However, we are unable to perceive in Dateland's conduct any moral culpability. "To avoid redundancy with the other *Rowland* factors, the moral blame that attends ordinary negligence is generally not sufficient to tip the balance of the *Rowland* factors in favor of liability." (*Martinez v. Bank of America National Trust and Savings Association* (2000) 82 Cal.App.4th 883, 896.) To assign moral blame, courts have required inherently harmful acts, acting with the intent of causing harm, actual or constructive knowledge the harm would result, or recklessness. (*Ibid.*) There is no evidence to support such culpability here. In our judgment, requiring contractors to put up and take down caution tape around every trench at a construction site would impose a greater burden than the risk justifies, particularly because these

15

hazards are known and understood by people working in construction. Finally, the availability of workers' compensation benefits weighs against imposing a duty of care.

Torres argues we should find Dateland directly liable because "[t]riable issues of fact exist as to whether [Dateland] breached its common law duty by leaving the open trench unguarded, without any warning." He locates this duty in cases holding a company acts "under a duty to use reasonable care to see that the portion of the [project] under its control and upon which it had worked was reasonably safe." (*Gibbons v. City of San Bernardino* (1951) 108 Cal.App.2d 33, 35 (*Gibbons*).)

The authority on which Torres relies concerns the duty of care construction firms owe to the *public* when their work affects *publicly accessible areas*. In *Gibbons*, for example, a motorist struck a raised manhole cover on a public street in San Bernardino that was undergoing repairs by a paving firm. (*Gibbons*, *supra*, 108 Cal.App.2d at p. 34.) The contract between the city and the paving firm required an expanse of surfaced roadbed for use of the public during the work to permit public traffic to pass through the construction area, and the raised manhole cover that caused the accident was in this publicly accessible roadway. (*Id.* at pp. 34-35.) The Court of Appeal recognized in that context the paving company "had a duty to warn the traveling public of dangers . . . which it created in the course of its work," though the court ultimately held the paving company could not be liable because it was the city who placed the obstruction in the roadway. (*Id.* at p. 35.)

Our case does not implicate the same principles because the Villa Hermosa Phase II construction site was closed to the public, and the party injured was an experienced construction worker, familiar with the risks inherent in such building projects and with the risk of open trenches on the jobsite. That familiarity in turn informs whether the category of harm was foreseeable.

We conclude the trial court correctly concluded that Dateland had no duty to warn Torres of the open fire riser trench. We therefore affirm the order granting summary judgment on the negligence and premises liability claims to the extent they are based on establishing a common law duty of care.

B. *Regulatory and Contractual Sources of a Duty*

1. *Duty to post caution tape under safety policies*

As an alternative to a common law duty, Torres locates the source of the duty in safety policies at the jobsite. He argues Dateland had a safety policy of placing caution tape around unattended open trenches and that the evidence of this policy creates a genuine issue of material fact as to whether it breached its duty of care by failing to put caution tape around the trench Torres fell into.

According to Torres, Dateland's project manager's testimony establishes the existence of a policy to put up caution tape. The project manager agreed that Dateland puts warning signs near its trenches when the trenches have not been filled. "There would be caution tape all the way around the trench if we leave the trench open and no workers are there." Torres argues *Dillenbeck v. City of Los Angeles* (1968) 69 Cal.2d 472, 478

(*Dillenbeck*) establishes "[t]he safety rules of an employer are . . . admissible as evidence that due care requires the course of conduct prescribed in the rule." In this case, he argues, "Dateland's safety rule/policy establishes the standard of care. There are triable issues as to whether Dateland breached the standard of care by not complying with its own safety rules for this trench."

Unlike in *Dillenbeck*, the trial court here did not exclude evidence of standard practices. On the contrary, the court admitted the evidence that Dateland would place caution tape around some trenches and considered whether the testimony could support a finding that Dateland had a policy that established a duty of care. The court concluded the project manager "did not testify that such was an established Dateland 'policy,' nor was there any testimony about whether such a 'policy' was a written policy or regulation such that failure to follow the policy/regulation is enforceable by Cal/OSHA." We agree with this determination. The testimony did not identify the use of caution tape as a policy or safety rule, whether written, as in *Dillenbeck*, or otherwise. Moreover, the testimony did not identify the kind of trenches Dateland would mark with caution tape, or the conditions when they would do so.

Other evidence established there was no such policy in place for constructing fire riser trenches. In his declaration, the same project manager represented that Dateland built the fire riser trenches at Villa Hermosa Phase II to comply with Sun Country's and Cal-OSHA safety standards and that neither set of standards included "requirements for signage, caution tape, cover or bridging over the trench." Everardo Ortiz, who was in

18

charge of jobsite safety for Sun Country and saw the trench after the incident, testified that the area did not require caution tape "because it wasn't that deep of a trench" and tape was required only for trenches that were four feet deep. We agree with the trial court that the same project manager's testimony about caution tape "does not raise a triable issue of fact as to whether failure to place caution tape around the trench was a breach of [a] duty."

### 2. *Duty to warn under Cal-OSHA regulations*

Torres also contends "Dateland had a duty under Cal/OSHA regulations to place warnings around the trench." He cites *Elsner v. Uveges* (2004) 34 Cal.4th 915 (*Elsner*) for the proposition that "Cal-OSHA provisions are to be treated like any other statute or regulation and may be admitted to establish a standard or duty of care in all negligence and wrongful death actions, including third party actions." (*Id*. at p. 928)

That much is correct. However, Torres identifies no Cal-OSHA regulations which create a duty to place warnings around a trench like the one at issue in this case. Instead, he relies on the purported company policy to put up caution tape discussed in part II.B.1. above, and argues Cal-OSHA regulations required that policy to be in writing (Cal. Code Regs., tit. 8, § 3203, subd. (a)), and *Elsner* and Evidence Code section 669 establish that violating the policy is negligence per se.

The testimony which addressed policies at the jobsite states unequivocally that the companies did not have a policy requiring caution tape to be placed around fire riser trenches. We disagree with Torres's attempt to conjure a specific duty of care from the

19

project manager's vague testimony and deem it incorporated into Cal-OSHA regulations and made enforceable by Evidence Code section 669.

The construction business is heavily regulated precisely because active construction sites necessarily create dangers for anyone with access to them. Specific regulations address the dangers of trenches, but none address the kind of trenches at issue in this case. In the trial court, Torres argued Cal-OSHA Construction Safety Order sections 1540 and 1541, which define excavations and general safety requirements, imposed a duty to warn and build fall protection. Section 1541, subdivision (l) requires fall protection for excavations "[w]here employees or equipment are required or permitted to cross over excavations over 6-feet in depth and wider than 30 inches." (Cal. Code Regs., tit. 8, § 1541, subd. (l).) Section 1540 defines trenches and establishes that the measurement of a trench's width concerns the width of the trench at the bottom. (Cal. Code Regs., tit. 8, § 1540.)

The trial court addressed these provisions in its ruling and rightly concluded they do not establish a duty applicable to the trench in this case. Torres has not challenged this portion of the trial court's ruling in his appellate briefs and has therefore forfeited or abandoned the issue. (See *Eck v. City of Los Angeles* (2019) 41 Cal.App.5th 141, 146.) However, we exercise our discretion to address the merits of the legal issue. Cal-OSHA section 1541 requires fall protection only for "excavations *over* 6-feet in depth *and* wider than 30 inches." (Italics added.) Torres's testimony does not establish the trench was that large. At his deposition, he was asked, "Do you know approximately how big the trench

20

was?" He responded, "Depth-wise, it was around 5 to 6 feet deep. Wide, I'm not too sure." His testimony does not support a finding that the trench was greater than six feet deep and 30 inches wide. We agree with the trial court that his testimony fails to raise a factual issue implicating the duties created by the Cal-OSHA fall protection regulations.

Moreover, as the trial court concluded, Torres's testimony was legally insufficient to overcome the objective visual evidence that the trench was about two- to three-feet deep. Photographs of the accident site contradict his testimony that the trench was five- to six-feet deep. Two photos show boards collapsed in the trench after the incident. They show a trench that is a few feet deep at most. We agree with the trial court that the photographic evidence reveals Torres's testimony to be a "visible fiction." (See *Scott v. Harris* (2007) 550 U.S. 372, 376, 380-381 (*Scott*) ["When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment"].)

All the other evidence confirms what the photographs depict. Dateland's construction industry expert said that two- to three-feet deep fire risers were standard in the industry and explained digging deeper would interfere with other building infrastructure. Sun Country's superintendent for the project said he saw the trench where Torres fell, and it was about two feet deep. Dateland's project manager confirmed Dateland was contracted to install fire risers which required trenches "which are uniformly no more than two feet deep, and approximately two (2) feet wide." And

21

Dateland built an exemplar fire riser trench of the same design used at the site, and its expert said it was two- to three-feet deep.

As the trial court held, a party cannot create a material dispute of fact warranting trial by contradicting what can be plainly observed. (*Scott*, *supra*, 550 U.S. at p. 380; see also *Mezger v. Bick* (2021) 66 Cal.App.5th 76, 88.) *Scott* and *Mezger* involved video recordings, not photographic evidence. However, the photographic evidence in this case is sufficient to do the same work because the factual question is so simple. (See *Marrero v. Air Brook Limousine* (S.D.N.Y. Apr. 23, 2014) 2014 WL 1623706, *1, 5 [holding plaintiff failed to present a genuine issue of material fact in part because "damage to the cars shown in the photograph is inconsistent with Plaintiff's assertion"].)

We reach the same conclusion in this case about Torres's vague estimate of the depth of the trench. Torres's testimony was not sufficient to create a triable issue of fact as to whether Dateland had a duty to provide fall protection under Cal-OSHA section 1541 because it is blatantly contradicted by objective photographic evidence as well as the testimony of eyewitnesses and experts. No reasonable jury could believe Torres's testimony about the size of the trench. (*Scott*, *supra*, 550 U.S. at p. 376.)

### 3. *Duty to assign someone to perform daily inspections*

Finally, Torres argues Dateland had a duty to inspect the site of the fire riser trenches and failed to do so, which led to him suffering an injury the inspection requirement is designed to prevent. He argues Cal-OSHA section 1541, subdivision (k)(1), requires daily inspections of excavations "for evidence of a situation that could

result in possible cave-ins, indications of failure of protective systems, hazardous atmospheres, or other hazardous conditions." (Cal. Code Regs., tit. 8, § 1541, subd. (k)(1).)

We have already concluded the fire riser trench was not a hazardous or dangerous condition that required special precautions under Cal-OSHA regulations. For example, these small trenches did not require structural ramps under section 1541, subdivision (c) or fall protection under section 1541, subdivision (l). There's no suggestion that the excavation occurred during rainfall (see § 1541, subd. (h)), next to an adjacent structure (see § 1541, subd. (i)), or contained loose rock or soil that could endanger a worker in the trench (see § 1541, subd. (j)). Indeed, on appeal, Torres has identified no regulation and no dangerous condition against which an inspection could have protected him. Thus, the only danger an inspection could have turned up was the fact that someone had placed boards across the trench, allowing a worker, like Torres, to attempt to walk across it.

It is uncontested the parties do not know who placed the boards across the fire riser trench. The evidence suggested Sun Country employees were the only ones using boards of the sort used, but also shows Sun Country had a policy against building bridges out of boards to allow access over trenches. A Sun Country employee said he saw Torres place the lumber over the trench for his own convenience, but Torres denied that. Regardless, there is no evidence to support a finding that Dateland created the hazard presented by the board.

23

The evidence is also uncontested that Sun Country employed a safety officer for the jobsite, Everardo Ortiz, and that he conducted daily inspections. Ortiz testified that he conducted safety inspections on June 20 and June 21 and noted no safety issues. Though the safety inspection on the day of the incident occurred at 10:00 a.m., after Torres's fall, there is no support for Torres's contention that no inspection occurred. Torres argues Dateland was required to hire its own inspector for the jobsite under its agreement with Sun Country. However, the agreement says only that Dateland was required to have a supervisor on site and make regular reports to Sun Country, and Dateland's project manager said Dateland relied on Sun Country's safety officer for inspections. We agree with the trial court's conclusion that there is no triable issue of fact as to whether Dateland's failure to have its own daily inspections was a breach of duty.

### III

### DISPOSITION

We affirm the judgment. Dateland is entitled to recover its costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAPHAEL _____
J.

We concur:

RAMIREZ _____
P. J.

McKINSTER _____
J.

24