[No. B173832. Second Dist., Div. One. Mar. 23, 2006.]

DAVID MICHAEL, Plaintiff and Appellant, v.
DENBESTE TRANSPORTATION, INC., et al., Defendants and
Respondents.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rules 976(B) and 976.1, this opinion is certified for
publication with the exception of part II.D.

**COUNSEL**

Klein, DeNatale, Goldner, Cooper, Rosenlieb & Kimball, David J. Cooper and Catherine E. Bennett for Plaintiff and Appellant.

Brown, Brown & Klass, Delos E. Brown and John J. Stumreiter for Defendant and Respondent Denbeste Transportation, Inc.

McNamara, Spira & Smith, J. Patrick Jacobs and Mary O. O'Neill for Defendants and Respondents Chemical Waste Management, Inc., and Aman Environmental Construction, Inc.

Wood, Smith, Henning & Berman, Kevin D. Smith, Nicholas M. Gedo and Tod R. Dubow for Defendant and Respondent Secor International, Inc.

## OPINION

**MALLANO, J.**—In this worksite accident case, plaintiff David Michael, a truck driver hauling hazardous waste, appeals from a summary judgment in favor of defendants Denbeste Transportation, Inc. (a hazardous waste hauler subcontractor and Michael's hirer), Chemical Waste Management, Inc. (CWM) (a hazardous waste handler and Denbeste's hirer), Aman Environmental Construction, Inc. (Aman) (the general contractor for the demolition work on the site and CWM's hirer), and Secor International, Inc. (a consultant hired by the owner of the site, but not the hirer of Michael or the other defendants).

In a line of cases from *Privette v. Superior Court* (1993) 5 Cal.4th 689 [21 Cal.Rptr.2d 72, 854 P.2d 721] (*Privette*) to *Kinsman v. Unocal Corp.* (2005) 37 Cal.4th 659 [36 Cal.Rptr.3d 495, 123 P.3d 931] (*Kinsman*), our Supreme Court, in a body of law known as the *Privette* doctrine, has defined the circumstances under which an injured worker who is an employee of an independent contractor may sue the hirer of that contractor. This case presents the first impression issue of whether the *Privette* doctrine applies where the injured plaintiff is not an employee, but an independent contractor, of that contractor. We conclude that the *Privette* doctrine governs because its policies and rationale are applicable here. Accordingly, we affirm the summary judgment in favor of Aman, CWM, and Secor on the ground that they owed no duty to plaintiff as a matter of law under the *Privette* doctrine. In the unpublished portion of our opinion, we conclude that Denbeste is not entitled to summary judgment because of triable issues of fact as to whether Michael was Denbeste's employee or an independent contractor.

## I

## BACKGROUND[1]

Michael was seriously injured at a construction site on the morning of January 18, 2002, when he fell about 10 feet from a loaded trailer to the ground while attempting without any fall protection to install a manual roll tarp over the trailer. Michael sustained a broken spine, which rendered him permanently paralyzed from his chest to his feet.

Michael owned a road tractor and operated a sole proprietorship under the name David Michael Trucking. Michael had many years of experience as a truck driver of end dump trucks and held a hazardous materials certificate.

---

[1] Unless otherwise indicated, the facts are those which were undisputed by the parties at the summary judgment motions.

Filtrol Corporation (not a party herein) owned property improved with an old plant. On May 1, 2000, Filtrol entered into a written contract with Aman to act as the general contractor to provide "decontamination, demolition and remediation services" for the Filtrol facility. In its contract with Filtrol, Aman agreed to assume "sole responsibility for providing to [its] employees and the employees of [its] subcontractors a safe place to work . . . and safe ladders, scaffolding and other equipment to work upon . . . ."

Aman prepared for Filtrol a "Site Specific Health & Safety Plan" (SSP) and assumed the responsibility to implement it. The SSP provided that "[t]he Subcontractor Field Supervisor is responsible for implementing the Plan for his/her own employees," and that "[c]onsistent with contractual obligations, subcontractors will be responsible for the following: [¶] . . . [¶] . . . Providing a safe and healthful working environment for their personnel on the project." Under the SSP, each subcontractor was required to appoint a "Subcontractor Safety Representative" whose duties included "the responsibility for the administration of the subcontractor Health and Safety Program."

In addition, the SSP contained detailed fall-protection procedures, including the requirement that "one or more of the fall protection/prevention systems outlined in this procedure [shall be] provided at all locations where fall hazards of 6 feet (2 meters) or greater exist. These locations include, but are not limited to, excavations, unprotected elevations, ladders, scaffolds, floor holes, wall openings, formwork, rebar tying, and all other locations and operations where potential fall hazards exist."

Filtrol also entered into a contract with Secor in which Secor agreed to be Filtrol's "Oversight Contractor" to "provide technical oversight of the decontamination, demolition and remediation of the Filtrol facility," but Secor "will not 'arrange' . . . for the disposal of, accept title to, sign manifests for, or take control of any 'wastes.' " Secor was not hired to perform any transportation or disposal of wastes, and it did not do so or hire anyone to do so.

Aman hired CWM to provide transportation and disposal of the waste materials from the site.[2] CWM then hired Denbeste.[3] On July 16, 2001,

---

[2] CWM produced a written contract between itself and Aman which was dated January 18, 2002, the date of Michael's accident. According to Aman's senior project manager Michael Kuhn, Aman had on file a master services agreement with CWM, one of Aman's authorized subcontractors. But Kuhn did not know whether Aman and CWM had executed a written contract specific to the Filtrol site before the contract dated January 18, 2002. The January 18, 2002 contract between Aman and CWM provided that Aman "shall provide CWM a safe work environment for services performed on any premises owned or controlled by [Aman]."

[3] A Denbeste representative testified that he was unaware of a written contract between CWM and Denbeste that was specific to the Filtrol site, but the companies had a written general services agreement and CWM signed purchase orders specific to the Filtrol site.

Denbeste and Michael entered into a "Subhaul Agreement" under which Michael provided his own tractor to pull a Denbeste-owned trailer, an end dump trailer. The Subhaul Agreement involved the carriage of nonradioactive hazardous waste and required that the trailer be tarped after it was loaded with the waste materials, and that Michael wear proper safety equipment, including a protective suit, goggles, and a breathing apparatus. The trailer had a manual roll tarp system in which the tarp, stored on the right side of the trailer, was unrolled over metal bows across the trailer. The ends of the bows needed to be set into the sides of the trailer. When Michael picked up the trailer, Denbeste's mechanic gave him "a few-minute instruction course on the trailer," but the mechanic did not discuss going "into or out of the bed of the trailer" or placing of the bows. Before working for Denbeste, Michael had not had occasion to place or to remove bows from the sides of a trailer.

At the time of Michael's fall, Denbeste did not own tarp racks (scaffolds with railings or standard building racks), but Denbeste rented them from time to time if requested by a customer. Before Denbeste began its work, tarp racks were used by other workers at the site to secure the tarps on trailers containing radioactive hazardous waste. Denbeste had a written health and safety program which applied to the job. One of the stated objectives of the Denbeste program was "[m]aintaining a system for prompt detection and correction of faulty procedures, unsafe practices and conditions." Management had the responsibility "to see that work is performed in a safe manner and that safety rules, regulation[s] and instructions are complied with."

Michael's Subhaul Agreement with Denbeste characterized Michael as an independent contractor. Denbeste paid Michael on a per-job basis. Michael did not receive employee benefits and he paid for the fuel, maintenance, and insurance for his tractor. At the time of the Subhaul Agreement, Michael had no employees, and he was required to notify Denbeste if he needed to hire any employees. Michael could work for other haulers if Denbeste had no work for him, but the Subhaul Agreement prohibited him from using Denbeste's trailer on other jobs. Before his accident, Michael had pulled about 10 to 15 loads from the site, which constituted only a minor percentage of his overall work. Denbeste also employed at the site its own truck drivers who performed the same work as its independent contractor truck drivers.

Denbeste's truck boss on the site, Donald Jensen, supervised the Denbeste workers, but it was Aman who directed the loading of the materials into the trucks and who directed the truckers to an area where they would tarp their loads. The tarping area varied but did not change very much during the six weeks Jensen was at the site. Jensen would check each hauler at the entrance to the site to make certain that the driver was wearing the protective equipment required by Aman, which included a Tyvek haz-mat suit and a respirator.

Jensen knew that Michael walked with a pronounced limp and had a hard time "getting around." Although Michael was able to climb up onto the load in the trailer to place the tarp over the load, it took Michael "a little time." About 30 percent of the time Jensen helped Michael tarp his trailer. On the occasions when Michael received assistance in tarping his trailer, the person assisting him always climbed onto the load in the trailer. For a two-week period, Michael stood on a ladder outside of the trailer in order to put the bows into place before unrolling the tarp, but he discontinued use of the ladder in order to save time.

In September 2001, Michael sprained his ankle when he slipped off the Denbeste trailer while one foot was on the tire and the other foot was on the fender. Although this incident did not occur at the Filtrol site, Denbeste knew about it. Sometime before January 18, 2002, Michael discussed with Denbeste the possibility of using a newer trailer on which Michael could install an automatic tarping system. According to Michael, he told Denbeste that he would pay to place on the trailer an automatic tarping system that would not require him to climb onto the trailer. According to Denbeste, Michael did not have the money to pay for an automatic tarping system, and Michael did not ask Denbeste to advance money for an automatic tarping system.

On the morning of his fall, Michael was wearing his Tyvek suit and respirator. He climbed onto the loaded trailer to place metal bows across the trailer in preparation for rolling the tarp over the bows. When he was at the rear part of the trailer, he lost his footing and fell off the trailer to the ground. Michael does not know whether he tripped or slipped. When Michael appeared to be taking longer than normal, Jensen advised Kuhn, Aman's senior project manager, that Jensen was going to check on Michael. Jensen put on a Tyvek suit and respirator and went to Michael's truck. Jensen saw Michael lying on his back on the ground to the left rear of the trailer. Michael told Jensen that he could not feel anything in his legs.

In September 2002, Michael filed a complaint for damages against defendants. After answering the complaint, each defendant brought a motion for summary judgment or in the alternative for summary adjudication of issues. (Aman and CWM filed a joint motion.) All defendants maintained that they owed no duty to Michael as a matter of law under *Privette, supra,* 5 Cal.4th 689, and its progeny. Denbeste also sought summary judgment on the ground that the action was barred by the principle of primary assumption of the risk, by the lack of causation, and by a contractual release from liability set out in paragraphs 11(B) and 15 of the Subhaul Agreement.[4]

---

[4] Paragraph 11 provides in pertinent part: "Subhauler [Michael] shall maintain at its own expense during the term of this agreement the following insurance coverage: [¶] (A) Liability insurance covering all vehicles . . . . [¶] (B) Subhauler shall maintain during the entire

After extensive briefing and oral argument, the court granted the defendants' motions for summary judgment. As to Secor, the trial court stated that "[t]here is no evidence Secor hired, employed, or entrusted work to anyone. Therefore, the Court finds no triable issue as to its liability for negligent hiring or under the peculiar risk or retained control doctrines, which fix liability only on a hirer. (Plaintiff's argument that Secor is vicariously liable under agency principles is unpersuasive.)"

With respect to the motions of Denbeste, Aman and CWM, the court noted that there was a dispute as to whether Michael was Denbeste's employee or an independent contractor, but "the distinction is immaterial." The court determined that Denbeste could not be held liable to Michael for its own negligence because Michael contractually assumed the risk of any such negligence. The court then applied the principles of the *Privette* doctrine to the issue of the liability of Aman and CWM regardless of whether Michael was an employee or an independent contractor of Denbeste. The court reasoned that because Michael's contract with Denbeste obligated him to maintain personal injury liability insurance on all of the vehicles used in providing subhaul services and to maintain workers' compensation coverage, "Aman/CWM had a right to expect that plaintiff, as an independent contractor, would factor the cost of insurance into the price of his contract with Denbeste and that he would comply with the insurance provisions of that contract. It also had a right to anticipate that its liability would not depend upon whether individuals hired by subcontractors (such as Denbeste) preferred to be employees or independent contractors. [¶] In short, there is no reason why Aman/CWM should be held to any greater liability because plaintiff is an independent contractor than it would if he were Denbeste's employee. Therefore, the *Privette/Toland* rule applies, and plaintiff must present evidence that defendants actually exercised their retained supervisory control in a manner that affirmatively contributed to his injury." The court

period . . . this Agreement is in effect policies of public liability and property damage insurance as required by the California Public Utilities Commission and any other governmental agency having jurisdiction. . . . [¶] . . . [¶] Subhauler agrees to indemnify and hold Prime Carrier [Denbeste] . . . and Prime Carrier's officers, directors, agents, and employees free and harmless from all claims, loss and damage on account of injury to or death of persons, or damage to property, caused or alleged to be caused by in connection with the operation of equipment belonging to or used by Subhauler or drivers engaged or employed by Subhauler, including all claims, loss, pilferage, or damage to equipment and cargo that is in Subhauler's possession or under its dominion or control. [¶] (C) Worker's Compensation coverage in amounts [that] are required by law for Subhauler, its employees and all those who perform labor or other services under this agreement."

Paragraph 15 provides in pertinent part: "The Subhauler and its employees and agents shall be responsible for their own safety and the Subhauler hereby releases and agrees to indemnify and [hold] Prime Carrier harmless from and against any damage to the Subhauler property or injury to the Subhauler's employees or agents which may be incurred by reason of the Subhaulers performing its services hereunder."

found that there was no triable issue with respect to the liability of Aman and CWM under the retained control doctrine and granted summary judgment in their favor.

Michael moved for a new trial with respect to the summary judgment in favor of Denbeste, Aman and CWM. The motion was denied. Michael appealed from the summary judgment.

## II

## DISCUSSION

"A defendant's motion for summary judgment should be granted if no triable issue exists as to any material fact and the defendant is entitled to a judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) The burden of persuasion remains with the party moving for summary judgment. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850, 861 [107 Cal.Rptr.2d 841, 24 P.3d 493] . . . .)" (*Kahn v. East Side Union High School Dist.* (2003) 31 Cal.4th 990, 1002–1003 [4 Cal.Rptr.3d 103, 75 P.3d 30].)

"On appeal from a summary judgment we undertake a de novo review of the proceedings below, and independently examine the record to determine whether triable issues of material fact exist. [Citations.] We review the trial court's ruling, not its rationale; thus, we are not bound by the trial court's stated reasons for granting summary judgment." (*McIntosh v. Mills* (2004) 121 Cal.App.4th 333, 337–338 [17 Cal.Rptr.3d 66].)

### A. *The* Privette *Doctrine*

In a series of cases beginning with *Privette, supra,* 5 Cal.4th 689, our Supreme Court has considered the circumstances under which an employee of an independent contractor has a claim against the hirer of the contractor under tort theories set out in the Restatement Second of Torts (Restatement). In *Privette, supra,* 5 Cal.4th 689, and *Toland v. Sunland Housing Group, Inc.* (1998) 18 Cal.4th 253 [74 Cal.Rptr.2d 878, 955 P.2d 504] (*Toland*), our Supreme Court "held that an employee of a contractor may not sue the hirer of the contractor under either of the alternative versions of the *peculiar risk* doctrine set forth in [Restatement] sections 413 and 416. Under section 413, a person who hires an independent contractor to do inherently dangerous work, but who fails to provide in the contract or in some other manner that special precautions be taken to avert the peculiar risks of that work, can be liable if the contractor's negligent performance of the work causes injury to others. Under section 416, even if the hirer has provided for special precautions in the contract or otherwise, the hirer can nevertheless be liable if the contractor fails

to exercise reasonable care to take such precautions and the contractor's performance of the work causes injury to others." (*Hooker v. Department of Transportation* (2002) 27 Cal.4th 198, 201 [115 Cal.Rptr.2d 853, 38 P.3d 1081] (*Hooker*).)

■ In *Camargo v. Tjaarda Dairy* (2001) 25 Cal.4th 1235, 1244 [108 Cal.Rptr.2d 617, 25 P.3d 1096], the court held that an employee of a contractor may not sue the hirer of the contractor under the negligent hiring theory set forth in section 411 of the Restatement.

■ In *Hooker*, the court refined the doctrine of negligent exercise of retained control in section 414 of the Restatement, holding that "a hirer of an independent contractor is not liable to an employee of the contractor merely because the hirer retained control over safety conditions at a worksite, but that a hirer is liable to an employee of a contractor insofar as a hirer's exercise of retained control *affirmatively contributed* to the employee's injuries." (*Hooker, supra*, 27 Cal.4th at p. 202.) But "[s]uch affirmative contribution need not always be in the form of actively directing a contractor or contractor's employee. There will be times when a hirer will be liable for its omissions. For example, if the hirer promises to undertake a particular safety measure, then the hirer's negligent failure to do so should result in liability if such negligence leads to an employee injury." (*Id.* at p. 212, fn. 3.)

In a companion case to *Hooker*, the court in *McKown v. Wal-Mart Stores, Inc.* (2002) 27 Cal.4th 219 [115 Cal.Rptr.2d 868, 38 P.3d 1094], upheld a jury verdict for an injured contractor's employee against the hirer of the contractor because the hirer had furnished the employee with a defective forklift that had contributed to his injury. (*Id.* at pp. 223–226.)

■ The most recent California Supreme Court case to address the *Privette* doctrine is *Kinsman, supra*, 37 Cal.4th 659. In *Kinsman*, an employee of an independent contractor was injured as a result of a hazardous condition (exposure to asbestos) on the landowner's premises when it was claimed that only the landowner knew the employee, a carpenter, was being exposed to the hazardous substance. (*Id.* at p. 664.) The court held that "the hirer as landowner may be independently liable to the contractor's employee even if it does not retain control over the work, if: (1) it knows or reasonably should know of a concealed, preexisting hazardous condition on its premises; (2) the contractor does not know and could not reasonably ascertain the condition; and (3) the landowner fails to warn the contractor." (*Id.* at p. 675.) The court emphasized that its holding "would not apply to a hazard created by the independent contractor itself, of which that contractor necessarily is or should be aware." (*Id.* at p. 675, fn. 3.)

█ "A useful way to view the above cases is in terms of delegation. As suggested by *Privette*, at common law, it was regarded as the norm that when a hirer delegated a task to an independent contractor, it in effect delegated responsibility for performing that task safely, and assignment of liability to the contractor followed that delegation. (*Privette, supra,* 5 Cal.4th at p. 693.) For various policy reasons discussed in *Privette*, courts have severely limited the hirer's ability to delegate responsibility and escape liability. (*Id.* at p. 694.) But in *Privette* and its progeny, we have concluded that, principally because of the availability of workers' compensation, these policy reasons for limiting delegation do not apply to the hirer's ability to delegate to an independent contractor the duty to provide the contractor's employees with a safe working environment. In fact, the policy in favor of delegation of responsibility and assignment of liability is so strong in this context that we have not allowed it to be circumvented on a negligent hiring theory. Nonetheless, when the hirer does not fully delegate the task of providing a safe working environment, but in some manner actively participates in how the job is done, and that participation affirmatively contributes to the employee's injury, the hirer may be liable in tort to the employee." (*Kinsman, supra,* 37 Cal.4th at p. 671.)

B. *Liability of Aman and CWM*

1. Privette *Doctrine Applies to Hirers of an Injured Independent Contractor*

Michael contends that if he was an independent contractor and not Denbeste's employee, Aman and CWM "owed [him] duties under the Restatement Second of Torts, sections 413, 414, and 416, without any further showing." In other words, Michael maintains that the holdings of *Privette* and its progeny (limiting the peculiar risk doctrine in cases involving on-the-job injuries) do not apply here if he was an independent contractor rather than Denbeste's employee. Essentially, Michael proposes a rule that would preclude Aman and CWM from delegating to Denbeste the duty to ensure the safety of the work site for independent contractors hired by Denbeste. We disagree.

Assuming for purposes of analyzing the liability of Aman and CWM that Michael is an independent contractor rather than an employee with respect to Denbeste,[5] we conclude that the *Privette* doctrine governs nevertheless.

---

[5] The trial court noted that the parties disputed whether Michael was Denbeste's employee or an independent contractor and assumed for the sake of argument that Michael was an independent contractor. "The question of whether one engaged to perform services for another is an employee or an independent contractor is ordinarily a question of fact. However, if only one inference may be drawn from all the facts, the question is one of law." (*Torres v. Reardon* (1992) 3 Cal.App.4th 831, 838 [5 Cal.Rptr.2d 52].) The principal test of an employment

Applying the *Privette* doctrine's limitations on liability here is consistent with common law principles and public policy elucidated in *Kinsman*, including the strong policy in favor of delegation by hirers. Further, notwithstanding the exclusion of independent contractors from the mandatory workers' compensation system (*Torres v. Reardon, supra*, 3 Cal.App.4th at p. 840), any lack of insurance coverage for Michael's injuries is not dispositive in determining application of the *Privette* doctrine. (See *Lopez v. C.G.M. Development, Inc.* (2002) 101 Cal.App.4th 430, 444–445 [124 Cal.Rptr.2d 227] (*Lopez*) [hirer of contractor not liable to injured employee of contractor under *Privette* doctrine notwithstanding failure of contractor to obtain workers' compensation insurance for its employees].)

As *Privette* explained: "At common law, a person who hired an independent contractor generally was not liable to third parties for injuries caused by the contractor's negligence in performing the work. [Citations.] Central to this rule of nonliability was the recognition that a person who hired an independent contractor had ' "no right of control as to the mode of doing the work contracted for." ' [Citations.] The reasoning was that the work performed was the enterprise of the contractor, who, as a matter of business convenience, would be better able than the person employing the contractor to absorb accident losses incurred in the course of the contracted work. This could be done, for instance, by indirectly including the cost of safety precautions and insurance coverage in the contract price." (*Privette, supra*, 5 Cal.4th at p. 693.) Accordingly, "at common law, it was regarded as the norm that when a hirer delegated a task to an independent contractor, it in effect delegated responsibility for performing that task safely, and assignment of liability to the contractor followed that delegation." (*Kinsman, supra*, 37 Cal.4th at p. 671.)

Michael does not contend that the duties of Aman and CWM with respect to the worksite were nondelegable. Even if the duties were nondelegable, the court in *Park v. Burlington Northern Santa Fe Railway Co.* (2003) 108 Cal.App.4th 595 [133 Cal.Rptr.2d 757] (*Park*) held that the *Privette* doctrine governed the issue of the liability of a generator of hazardous waste. "[A]lthough the duties imposed on the generator of hazardous waste by statute

---

relationship is whether the employer has the right to control the manner and means of accomplishing the result desired. (*Id.* at p. 837.) In addition, the test involves a consideration of several "secondary criteria," including whether the worker is engaged in a distinct occupation or an independently established business, whether the worker or the principal supplies the tools or instrumentalities, the method of payment, whether the work is part of the regular business of the principal, whether the worker has a substantial investment in the business other than personal services, and whether the worker hires employees to assist him. (*Ibid.*)

Although Denbeste argued in its motion for summary judgment that Michael was an independent contractor as a matter of law, the trial court declined to reach such a conclusion and assumed, without deciding, that Michael was an independent contractor.

and regulation are nondelegable duties that survive *Privette*, the generator is not liable to the employee of a subcontractor who is employed to dispose of the hazardous waste unless it is shown that the generator's conduct affirmatively contributed to the employee's injuries." (*Park*, *supra*, 108 Cal.App.4th at p. 610.) The court in *Park* concluded that the plaintiff did not show that any direct negligence of the generator caused his injuries or that the generator did anything which affirmatively contributed to his injuries. (*Id.* at p. 614.) And the court in *Sheeler v. Greystone Homes, Inc.* (2003) 113 Cal.App.4th 908 [6 Cal.Rptr.3d 683] stated that "the nondelegable duty rule is incompatible with the limitations on hirer liability established in *Privette* and subsequent cases." (*Sheeler v. Greystone Homes, Inc.*, *supra*, 113 Cal.App.4th at p. 922.)

■ The policy in favor of a hirer's delegation of responsibility is consistent with the policy underlying the workers' compensation laws. " 'The fundamental policy underlying the workers' compensation laws is that those hiring others to perform services should bear the risk of injuries incurred in the undertakings. When the person seeks to hire the services through a licensed independent contractor, it is *reasonable to anticipate* that the independent contractor will insure against the risk and that the cost of the insurance will be passed on as part of the price of the contract. Thus it is *reasonable to exonerate* the hirer of the independent contractor.' " (*Lopez*, *supra*, 101 Cal.App.4th at p. 445.)

Under the SSP, Aman and CWM had delegated to Denbeste safety responsibilities with respect to Denbeste's "personnel." Thus, when Aman and CWM hired Denbeste, the former could reasonably anticipate that Denbeste would insure against the risk of injuries incurred in Denbeste's work. And if Aman and CWM had no duty to ascertain whether Denbeste had complied with its obligation to obtain workers' compensation insurance for its employees (*Lopez*, *supra*, 101 Cal.App.4th at p. 445), they likewise should have no duty to inquire into whether Michael was an employee or an independent contractor with respect to Denbeste. As noted, at the Filtrol site, Denbeste had employees (who were provided workers' compensation insurance) performing the same tasks as Michael.

As recognized by the trial court, in delegating responsibility for employee safety to their subcontractors, Aman and CWM "had a right to anticipate that [their] liability would not depend upon whether individuals hired by subcontractors (such as Denbeste)" were employees or independent contractors, and there is no reason why Aman and CWM "should be held to any greater

liability because plaintiff is an independent contractor than it would if he were Denbeste's employee."[6]

■ Michael does not identify any public policy reason why Aman's and CWM's responsibilities to him (as an independent contractor) should be greater than their responsibilities to other workers who are Denbeste's employees. If the limitations of the *Privette* line of cases did not apply to Michael, he would have greater rights than a Denbeste employee. And those rights would be in derogation of the common law principle that hirers (Aman and CWM) delegating a task to an independent contractor (Denbeste) reasonably expect that in delegating such responsibility, the hirers have also assigned liability for the safety of workers engaged by that independent contractor. (See *Kinsman, supra,* 37 Cal.4th at p. 671.) For the foregoing reasons, we conclude that the *Privette* doctrine applies to Aman and CWM.

### 2. *No Liability Under* Privette *Doctrine*

Under the two prongs of the *Privette* doctrine, as stated in *Kinsman* (the first prong being the concealed hazard theory and the second prong being the retained control theory), we conclude that Aman and CWM are not liable to Michael as a matter of law. Assuming that the lack of tarp racks or other fall protection can be considered a concealed hazardous condition, it reasonably cannot be maintained that the contractor (whether Denbeste or Michael) did not know and could not reasonably ascertain the condition.

And under the retained control theory of liability, neither Aman nor CWM *exercised* any purported retained control in a manner that affirmatively contributed to Michael's injury. Michael argues that Aman's failure to provide tarp racks "affirmatively contributed" to his injury because Aman's agreement with Filtrol that Aman was responsible for site safety constituted a "promise" to Michael that Aman would provide fall protection. But there is no evidence that Aman or CWM "promise[d] to undertake a particular safety measure." (*Kinsman, supra,* 37 Cal.4th at p. 670.) Further, Michael confuses the *contractual right* of control with the *actual exercise* of such control. Thus, Michael may have raised triable issues of material fact as to whether each

---

[6] Although not discussed by the parties, Michael was not a "stranger to the work" as that term is defined in law, notwithstanding his assumed status as an independent contractor. (*Kinney v. CSB Construction, Inc.* (2001) 87 Cal.App.4th 28, 38 [103 Cal.Rptr.2d 594] (*Kinney*).) Neighbors, bypassers, and visitors to the worksite are considered to be strangers to the work. "Such strangers to the work appear to fall squarely within the original rationale for the 'retained control' doctrine: they have no assured remedy from any other source; if the subcontractor is primarily responsible, the hirer is entitled to equitable indemnity; it is fair to shift the burden of the injury from the innocent stranger to the beneficiary of the work; and the imposition of liability encourages the hirer to exercise the retained control so as to make the operation safe for third parties." (*Kinney, supra,* 87 Cal.App.4th at pp. 38–39.)

"defendant retained control over safety conditions at the worksite. However, plaintiff failed to raise triable issues of material fact as to whether defendant actually exercised the retained control so as to affirmatively contribute to [his injuries]." (*Hooker*, *supra*, 27 Cal.4th at p. 215.)

■ As stated by the court in *Kinney*, "we are satisfied that a general contractor owes no duty of care to an employee of a subcontractor to prevent or correct unsafe procedures or practices to which the contractor did not contribute by direction, induced reliance, or other affirmative conduct. The mere failure to exercise a power to compel the subcontractor to adopt safer procedures does not, without more, violate any duty owed to the plaintiff. Insofar as [Restatement] section 414 might permit the imposition of liability on a general contractor for mere failure to intervene in a subcontractor's working methods or procedures, without evidence that the general contractor affirmatively contributed to the employment of those methods or procedures, that section is inapplicable to claims by subcontractors' employees against the general contractor." (*Kinney*, *supra*, 87 Cal.App.4th at p. 39 [affirming summary judgment in favor of general contactor and against employee of subcontractor who fell from scaffold which allegedly lacked adequate fall protection].)

Here, as in *Kinney*, the evidence shows only that Aman and CWM failed to intervene in a subcontractor's working methods. Under *Kinney*, such failure is insufficient to constitute the affirmative contribution required for liability under the retained control theory. Thus, summary judgment was properly entered in favor of Aman and CWM.

## C. *Liability of Secor*

■ We agree with Michael that Secor, the oversight contractor is not his hirer or a hirer of any of the other defendants. But, as an agent of the landowner, it is appropriate to analyze Secor's liability under the *Privette* doctrine. Under the *Privette* doctrine, there is no legal distinction between a general contractor and a landowner who hires independent contractors; both are "hirers" within the meaning of the doctrine. (*Bell v. Greg Agee Construction, Inc.* (2004) 125 Cal.App.4th 453, 468 [23 Cal.Rptr.3d 33]; see also *Kinsman*, *supra*, 37 Cal.4th at p. 664, fn. 1.)

For the same reasons discussed with respect to Aman and CWM, Secor is not liable under the *Privette* doctrine because it cannot reasonably be maintained that the lack of tarp racks constituted a concealed hazardous condition and because there is no evidence that Secor exercised any purported retained control in a manner that affirmatively contributed to Michael's injury. The trial court properly granted summary judgment in favor of Secor.

---

D. *Liability of Denbeste**

· · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · ·

## DISPOSITION

The summary judgment as to defendants Aman Environmental Construction, Inc., Chemical Waste Management, Inc., and Secor International, Inc., is affirmed; the summary judgment as to defendant Denbeste Transportation, Inc., is reversed and on remand the trial court is directed to deny the summary judgment motion of Denbeste Transportation, Inc. The parties are to bear their own costs on appeal.

Spencer, P. J., and Rothschild, J., concurred.

Appellant's petition for review by the Supreme Court was denied July 12, 2006, S143048. Werdegar, J., and Moreno, J., were of the opinion that the petition should be granted.

---

*See footnote, *ante*, page 1082.