Filed 11/17/16 (unmodified opn. attached)
# CERTIFIED FOR PUBLICATION

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# SECOND APPELLATE DISTRICT

# DIVISION SIX

| | |
|---|---|
| AL KHOSH,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>STAPLES CONSTRUCTION COMPANY, INC.,<br><br>    Defendant and Respondent. | 2d Civil No. B268937<br>(Super. Ct. No. 56-2014-00447304-CU-PO-VTA)<br>(Ventura County)<br><br>**ORDER MODIFYING OPINION [NO CHANGE IN JUDGMENT]** |

THE COURT:

It is ordered that the opinion filed herein on October 26, 2016, and certified for publication, be modified as follows:

At the end of the last paragraph on page 11, delete the last sentence that reads: "A judgment may not be reversed due to the erroneous exclusion of evidence unless the court finds that the error resulted in a miscarriage of justice. (Evid. Code, § 354.)"

There is no change in the judgment.

Filed 10/26/16 (unmodified version)
**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| AL KHOSH,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>STAPLES CONSTRUCTION COMPANY, INC.,<br><br>    Defendant and Respondent. | 2d Civil No. B268937<br>(Super. Ct. No. 56-2014-00447304-CU-PO-VTA)<br>(Ventura County) |

An employee of an independent contractor generally may not recover tort damages for work-related injuries from the contractor's hirer.  (*Privette v. Superior Court* (1993) 5 Cal.4th 689, 702 (*Privette*).)  There are exceptions to this rule but they do not apply here.  We decide that the trial court correctly granted a motion for summary judgment against the injured employee when he failed to present evidence that respondent affirmatively contributed to his injuries.  As a result, there were no triable

issues of material fact on his theory that either the retained control exception or the nondelegable duty exception applied.

Al Khosh was injured while performing electrical work at California State University Channel Islands (the University). He was employed by Myers Power Products, Inc. (Myers), a subcontractor on the project. Khosh sued the general contractor, Staples Construction Company, Inc. (Staples), for negligence.

The trial court granted Staples's motion for summary judgment because Khosh failed to establish that Staples retained control over his work and affirmatively contributed to his injury. (Code Civ. Proc., § 437c; *Hooker v. Department of Transportation* (2002) 27 Cal.4th 198, 202 (*Hooker*).) Khosh contends that a reasonable jury could find Staples (1) retained control over the work and affirmatively contributed to Khosh's injury; and (2) breached a nondelegable duty to Khosh which caused his injury. He also contends the court erred in sustaining Staples's evidentiary objections. We affirm.

FACTS AND PROCEDURAL HISTORY

The University hired Staples to install a backup electrical system at the university. Staples hired DK Electrical Systems, Inc. (DK) as the high-voltage subcontractor for the project. DK hired Myers to construct and install electrical switchgear for the system.

The contract between Staples and the University required Staples to "exercise precaution at all times for the protection of persons and their property," and to "retain a competent, full-time, on-site superintendant to . . . direct the project at all times," among other things. It made Staples "exclusively responsible" for the health and safety of its

2

subcontractors, and required Staples to submit "comprehensive written work plans for all activities affecting University operations," including utility shutdowns.

Myers informed Staples it needed three days to accomplish its last task on the project, including a shutdown of the electrical system. The University scheduled a campus-wide electrical shutdown. The shutdown was to be followed by final testing of the system's operation.

Khosh arrived at the University two and a half hours before the scheduled shutdown time. The University's project manager let Khosh and a helper into a substation containing electrical switchgear. Khosh performed work in the substation, while the switchgear was still energized. An electrical arc flash occurred, severely injuring him. The flash occurred approximately half an hour before the shutdown was scheduled to begin. Staples did not have any personnel at the University at the time.

Khosh filed a complaint, asserting a cause of action for general negligence against Staples. Staples moved for summary judgment relying upon the *Privette* doctrine, which generally prohibits the employee of a contractor from suing the hirer of the contractor for work-related injuries. (*Privette, supra,* 5 Cal.4th at p. 702.)

Khosh argued *Privette* did not bar his claim because (1) Staples retained control over the work and affirmatively contributed to his injuries (*Hooker, supra,* 27 Cal.4th at p. 202.); and (2) Staples violated nondelegable regulatory duties because it did not have a qualified electrical worker present to supervise Khosh and did not prepare a written procedure for the electrical shutdown. Khosh offered an expert declaration that these

3

omissions caused or contributed to Khosh's injuries. The trial court excluded most of the declaration for lack of foundation. It also sustained objections to a declaration of Khosh's counsel that purported to authenticate records.

## DISCUSSION

### Standard of Review

Summary judgment is appropriate "if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) The defendant bears the initial burden of showing the plaintiff cannot establish one or more elements of the plaintiff's cause of action. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 853.) If the defendant carries his burden, the burden shifts to the plaintiff to establish a triable issue of material fact. (*Id*. at p. 850.)

Our review is de novo. (*Knapp v. Doherty* (2004) 123 Cal.App.4th 76, 84.) Upon the grant of summary judgment, we liberally construe the opposing party's evidence and resolve all doubts about the evidence in favor of the opposing party. (*Lyle v. Warner Brothers Television Productions* (2006) 38 Cal.4th 264, 274.)

We consider all evidence set forth in the moving and opposition papers, except evidence to which objections were properly sustained. (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1037.)

### Privette Doctrine

An employee of an independent contractor generally may not sue the contractor's hirer for work-related injuries. (*Privette*, *supra*, 5 Cal.4th at p. 702.) Instead, the injured

4

employee is generally limited to worker's compensation remedies against his employer.  (*Id*. at pp. 698-700, 702.)

There are exceptions to the *Privette* doctrine.  One allows a contractor's employee to sue the hirer of the contractor when the hirer (1) retains control over any part of the work and (2) negligently exercises that control (3) in a manner that affirmatively contributes to the employee's injury.  (*Hooker*, *supra*, 27 Cal.4th at p. 209.)  Another exception permits recovery when the hirer (1) has a nondelegable legal duty (2) which it breaches (3) in a manner that affirmatively contributes to the injury.  (*Padilla v. Pomona College* (2008) 166 Cal.App.4th 661, 669-670, 672 (*Padilla*); *Hooker*, at pp. 210, 215; *Evard v. Southern California Edison* (2007) 153 Cal.App.4th 137, 146-147 (*Evard*).)  Khosh presented sufficient evidence that Staples retained control over the work, but there is no evidence that Staples affirmatively contributed to Khosh's injury.

*Retained Control*

Khosh presented competent evidence that Staples retained control over safety.  In *Hooker*, a triable issue as to who retained control existed.  The construction manual required Caltrans to comply with safety laws and regulations, know about highway construction procedures and equipment, and recognize and anticipate unsafe conditions.  (*Hooker*, *supra*, 27 Cal.4th at pp. 202, 215.)  The manual required periodic visits by a construction safety coordinator, and authorized Caltrans to shut down work to correct dangerous conditions.  (*Id*. at p. 202.)  Similarly, in *Kinney v. CSB Construction, Inc.* (2001) 87 Cal.App.4th 28, there was a triable issue as to who retained control because the general contractor employed a superintendant who was authorized to eliminate safety hazards,

5

and who had the final say in any disagreements over safety. (*Id.* at p. 33.)

Here too, the contract required Staples to "keep all phases of the work under its control," including compliance with safety laws and regulations. It also required Staples to take affirmative safety measures, such as implementing a safety program and installing safety devices on job equipment. It made Staples "exclusively responsible" for the health and safety of its subcontractors and required Staples to "exercise precaution at all times for the protection of persons and their property" and "comply with all applicable laws relating to safety precautions." This evidence creates a triable issue of fact as to retained control.

But, "[i]n order for a worker to recover on a retained control theory, the hirer must engage in some active participation." (*Tverberg v. Fillner Construction, Inc.* (2012) 202 Cal.App.4th 1439, 1446 (*Tverberg*).) An affirmative contribution may take the form of directing the contractor about the manner or performance of the work, directing that the work be done by a particular mode, or actively participating in how the job is done. (*Ibid.*) Evidence of Staples's omissions does not create a triable issue of fact regarding affirmative contribution.

A hirer's failure to correct an unsafe condition, by itself, does not establish an affirmative contribution. (*Hooker*, *supra*, 27 Cal.4th at p. 215.) In *Hooker*, for example, there was no evidence of affirmative contribution where the contractor's hirer, Caltrans, knew crane operators on the project were not extending the outriggers, but did not take any corrective action even though it had the right to do so. (*Id.* at pp. 202-203, 214.) Caltrans's passive omission did not constitute an affirmative contribution. (*Id.* at p. 215.)

6

Khosh relies on similar omissions. He contends Staples promised to provide a written work plan for the shutdown, have a superintendant present to supervise Khosh's work, and comply with applicable codes, statutes, and regulations. He contends Staples affirmatively contributed to his injury by breaching these promises. (*Hooker*, *supra*, 27 Cal.4th at p. 212, fn. 3.)

*Hooker* does not foreclose the potential for liability based on the hirer's omission. (*Hooker*, *supra*, 27 Cal.4th at p. 212, fn. 3.) When a hirer promises to undertake a particular safety measure, the negligent failure to fulfill that specific promise may constitute an affirmative contribution. (*Ibid*.) For example, the hirer in *Tverberg* could be liable when it did not cover holes at a construction site after it impliedly agreed to do so in response to the plaintiff's employer's request. (*Tverberg*, *supra*, 202 Cal.App.4th at p. 1448.) But there was no specific promise here. This case is more like *Michael v. Denbeste Transportation, Inc.* (2006) 137 Cal.App.4th 1082, in which a general promise to be "responsible for site safety" did not constitute a specific promise to undertake a particular safety measure. (*Id*. at p. 1096.) Likewise, in *Padilla*, there was no affirmative contribution when the hirer did not shut off utilities before work began although it promised to be generally "responsible for . . . all safety precautions," and to "provide reasonable protection to prevent . . . injury . . . to . . . persons who may be affected" by the work. (*Padilla, supra*, 166 Cal.App.4th at pp. 666-667.) Because the hirer did not refuse a request to shut off service and did not prevent the independent contractor from installing protective devices there was no affirmative contribution. (*Id*. at p. 671.)

This case is unlike *Regalado v. Callaghan* (Sept. 22, 2016, D069647) __ Cal.App.5th __ [2016 DJDAR 9788] (*Regalado*) in which evidence of an affirmative contribution supported a jury's verdict against the hirer. There, the defendant hired a contractor to install a pool and spa at his home. The plaintiff, an employee of the pool contractor, was injured by an explosion in an underground vault which housed a propane heater for the pool. The defendant participated in the construction work, including installation of the underground vault. He worked with another contractor to modify the entry and exit points to the underground vault, and ran a propane line to the vault. He also obtained the permits for the plumbing to the vault, but did not obtain permits for the vault or the propane line, even though he represented to plaintiff's employer that he did so. The plaintiff's injury occurred when he ignited the propane heater in the inadequately ventilated vault, causing an explosion.

Unlike the facts in *Regalado*, Staples did not directly participate in construction activities. Staples did not assist in building the electrical substation or its component parts. Nor did Staples represent that all steps of the construction had passed inspection before Khosh began his work.

Like the contract in *Padilla*, Staples's agreement with the University imposed only a general duty to prevent accidents. It did not impose specific measures that Staples was required to undertake in response to an identified safety concern. There is no evidence that Staples refused a request to shut off electrical power or prevented Khosh from waiting until the scheduled shutdown before starting work. There is no evidence Myers or Khosh relied on a specific promise by Staples. There is

8

no evidence of an act by Staples which affirmatively contributed to Khosh's injury.

*Nondelegable Duty*

Khosh contends two safety regulations imposed nondelegable duties on Staples.  He contends Staples violated California Code of Regulations, title 8, section 2940, subdivision (c) (hereafter section 2940(c)), which states:  "Only qualified electrical workers shall work on energized conductors or equipment connected to energized high-voltage systems. . . . Employees in training, who are qualified by experience and training, shall be permitted to work on energized conductors or equipment connected to high-voltage systems while under the supervision or instruction of a qualified electrical worker."  He also contends that Staples violated National Fire Protection Association (NFPA) Standard 70E, section 120.2, subdivision (D)(2)(b), which provides that "all complex lockout/tagout procedures shall require a written plan of execution that identifies the person in charge."  We disagree.

The *Privette* rule applies "when the party that hired the contractor (the hirer) fail[s] to comply with the workplace safety requirements concerning the precise subject matter of the contract."  (*SeaBright Ins. Co. v. US Airways, Inc.* (2011) 52 Cal.4th 590, 594 (*SeaBright*).)  The hirer of an independent contractor presumptively delegates to that contractor the duty to provide a safe workplace for the contractor's employees.  (*Id*. at p. 600.)  This includes any duty to comply with statutory or regulatory safety requirements.  (*Ibid*.)

In *SeaBright*, an airline hired an independent contractor to service and maintain luggage conveyors.  The plaintiff was injured when his arm was caught in its moving

9

parts.  An expert witness declared that Cal-OSHA regulations required safety guards which were not present but which would have prevented the injury.  The delegation of tort law duty "is implied as an incident of an independent contractor's hiring" and "[t]he policy favoring 'delegation of responsibility and assignment of liability' is very 'strong in this context' [citation]."  (*SeaBright*, *supra*, 52 Cal.4th at p. 602.)  Because the alleged "duty" to an independent contractor's employee "arose out of the contract" and "only existed because of the work . . . that [the independent contractor] was performing for the [hirer]," it "did not fall within the nondelegable duties doctrine."  (*Id.* at p. 603.)

Similarly, in *Padilla*, the duty to comply with a Cal-OSHA regulation requiring utilities to be shut off, capped, or otherwise controlled during demolition work was a delegable duty.  The regulation only applied when specific work was being performed.  (*Padilla*, *supra*, 166 Cal.App.4th at p. 671.)

The regulations at issue here are like those in *SeaBright* and *Padilla*.  Section 2940(c) applies specifically to "work on energized conductors or equipment connected to high-voltage systems."  NFPA Standard 70E, section 120.2, applies specifically to lockout/tagout procedures.  The regulations pertain to specific work, and apply only when that work is performed.  (*Padilla*, *supra*, 166 Cal.App.4th at p. 673.)

This case is unlike *Evard*, in which a regulation that required the owner of a billboard to maintain horizontal safety lines on the billboard imposed an ongoing, nondelegable duty.  (*Evard*, *supra*, 153 Cal.App.4th at p. 148.)  "The regulation [in *Evard*] imposed a permanent obligation on the owner with respect to the condition of the property; no one but the [owner]

10

was in a position to ensure that condition." (*Padilla*, *supra*, 166 Cal.App.4th at p. 673.)

The safety regulations here do not impose nondelegable duties under the *Seabright* test. But even if they did, "the liability of a hirer for injury to employees of independent contractors caused by breach of a nondelegable duty imposed by statute or regulation remains subject to the *Hooker* test." (*Padilla*, *supra*, 166 Cal.App.4th at p. 673.) Therefore, even where there is a breach of a nondelegable duty, the plaintiff must show that the breach affirmatively contributed to his injury. (*Id.* at p. 674.) The absence of a work plan or a supervisor did not affirmatively contribute to Khosh's injuries for the reasons set forth above.

*Evidentiary Objections*

Khosh contends the court erred in sustaining Staples's objections to evidence he filed in support of his opposition. The court sustained numerous objections to the declaration of Khosh's expert witness, including all paragraphs setting forth the expert's opinions and the facts the opinions were based on. It ruled those paragraphs lacked foundation and were argumentative. The court also sustained objections that certain exhibits attached to the declaration of Khosh's counsel were not properly authenticated.

We need not decide if the court erred in excluding this evidence because the excluded evidence does not create a triable issue of fact, and admitting the evidence would not warrant a different result. A judgment may not be reversed due to the erroneous exclusion of evidence unless the court finds that the error resulted in a miscarriage of justice. (Evid. Code, § 354.)

11

Khosh submitted the expert's declaration to support his contention that Staples breached regulatory duties. But the cited regulations do not create nondelegable duties. And the excluded contract documents were before the court when it decided the motion, because Staples submitted the same contract documents in support of its motion. None of the remaining exhibits are sufficient to show that Staples affirmatively contributed to Khosh's injury.

DISPOSITION

The judgment is affirmed. Respondent shall recover its costs on appeal.

<u>CERTIFIED FOR PUBLICATION.</u>

TANGEMAN, J.

We concur:

GILBERT, P. J.

YEGAN, J.

Vincent, J. O'Neill, Jr., Judge

Superior Court County of Ventura

_____

Angarella Law and Steven V. Angarella, for Plaintiff and Appellant.

Yukevich | Cavanaugh, James J. Yukevich, Cristina M. Ciminelli and Patrick J. Cimmarusti, for Defendant and Respondent.