Filed 12/3/25

# CERTIFIED FOR PUBLICATION

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| ROBERT ANDREWS, <br><br>    Plaintiff and Appellant, <br><br> v. <br><br> KURT A. WAGNER, as Personal Representative, etc., <br><br>    Defendant and Respondent. <br><br> ───────────────── <br><br> PAULA ANDREWS, <br><br>    Plaintiff and Appellant, <br><br> v. <br><br> KURT A. WAGNER, as Personal Representative, etc., <br><br>    Defendant and Respondent. | 2d Civil No. B332276 <br> (Super. Ct. No. 56-2020-00544222-CU-PO-VTA) <br> (Consol. w/56-2021-00549500-CU-PO-VTA) <br> (Ventura County) |

Robert Andrews ("Andrews"), an employee of an independent home inspection company, was injured when he

slipped and fell while performing his work duties.  He and his wife, Paula Andrews (collectively "appellants") sued the homeowner, Kathleen Wagner ("Wagner"), now deceased,[1] asserting causes of action for negligence, premises liability, and a derivative claim for loss of consortium.  The trial court granted summary judgment in favor of Wagner on the basis of the *Privette* doctrine, which holds that an employee of an independent contractor generally may not recover tort damages for work-related injuries from the contractor's hirer.  (*Privette v. Superior Court* (1993) 5 Cal.4th 689, 702 (*Privette*).)

Appellants contend the trial court's order granting summary judgment was erroneous because (1) Wagner failed to meet her burden to establish that she was a "hirer" within the meaning of the *Privette* doctrine, and (2) there are triable issues of fact regarding the application of the "concealed hazard" exception found in *Kinsman v. Unocal Corporation* (2005) 37 Cal.4th 659 (*Kinsman*).  We affirm.

*Facts and Procedural Background*

Wagner's homeowners' insurance company hired Property and Casualty Surveys, Inc. (PCSI) to conduct an inspection of her single-family home for the purpose of identifying hazardous conditions at her property.  Andrews, who was employed by PCSI as an independent field inspector, was assigned to perform the inspection.  His job was to assess the property's general condition, document safety issues, and identify potential risks regarding structural issues.  His duties also included photographing the condition of the home and preparing a written

---

[1] After Wagner's death, Kurt A. Wagner was appointed as her personal representative in this action.

report, which would be used by the homeowners' insurance carrier to determine renewal rates and levels of coverage.

Andrews had performed thousands of inspections prior to the day of the incident. His job required him to enter unfamiliar environments where he would encounter numerous unsafe conditions. PCSI expected Andrews to use his common sense and safely perform inspections.

On the date of the incident, Andrews arrived at Wagner's residence, introduced himself, and conducted the inspection of the interior of the home. He then accessed the property's backyard through the kitchen door, which Wagner closed behind him. Andrews did not ask Wagner about the backyard and she did not tell him anything about it. Wagner did not exercise any control over Andrews's work or provide him with any tools or supplies. Andrews conducted the inspection based on his sole discretion.

In the backyard, there were steps built into the ground made out of wooden railroad ties. Andrews did not specifically look at the steps, but knew they were there "peripherally." He was admittedly not paying attention to where he was stepping, and as a result, he fell down the stairs and was injured. Andrews conceded that had he looked down, he would have seen the steps, which were in plain sight, and likely would not have fallen. He did not know what he had slipped on and speculated that it may have been water or moss. He did not inspect the stairs and claimed the only way to do so would have been to get down on his hands and knees.

The weather was sunny and clear at the time of the accident, although Andrews later claimed there were clouds in the sky and that it had rained several hours earlier. Andrews conceded that the condition that allegedly caused his injuries was

3

part of the property he was assigned to inspect. Andrews received workers' compensation benefits for his injuries.

Andrews filed a complaint asserting negligence and premises liability against Wagner. Paula also filed a complaint against Wagner seeking damages for loss of consortium, and the two actions were consolidated. Wagner moved for summary judgment relying upon the *Privette* doctrine.

Apellants opposed the motion, claiming that *Privette* did not apply and that issues of fact existed concerning the concealed-hazard exception to *Privette* because (1) Wagner had allegedly told her gardener 10 years prior to the accident that the steps would sometimes get slippery, and (2) the gardener claimed he occasionally noticed the steps were slippery when wet, they sometimes had moss when damp, and he had warned his workers to be careful of slipping on the ties in wet conditions.

The trial court issued a tentative decision granting the motion in favor of Wagner. At oral argument, appellants argued that Wagner could not avail herself of the *Privette* doctrine because she did not directly hire PCSI and relied for the first time on *Gordon v. ARC Manufacturing, Inc.* (2019) 43 Cal.App.5th 705 (*Gordon*). After permitting Wagner to file supplemental briefing in response, the trial court adhered to its tentative decision granting summary judgment.

*Standard of Review*

Summary judgment is properly granted if "there is no triable issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) The defendant seeking summary judgment must show that the plaintiff cannot establish at least one element of the cause of action. (*Aguilar v. Atlantic Richfield Co.* (2001) 25

4

Cal.4th 826, 853 (*Aguilar*).)  If the defendant meets this burden, "the burden shifts to the plaintiff . . . to show that a triable issue of one or more material facts exists as to the cause of action or a defense thereto."  (Code Civ. Proc, § 437c, subd. (p)(2).)

On appeal, we conduct a de novo review of the record to "determine with respect to each cause of action whether the defendant seeking summary judgment has conclusively negated a necessary element of the plaintiff's case, or has demonstrated that under no hypothesis is there a material issue of fact that requires the process of trial, such that the defendant is entitled to judgment as a matter of law. [Citations.]" (*Guz v. Bechtel Nat. Inc.* (2000) 24 Cal.4th 317, 334.)  "We liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party." *(Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1037; *Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 768.)

*The Privette Doctrine*

"There is a strong presumption under California law that a hirer of an independent contractor delegates to the contractor all responsibility for workplace safety. [Citations.] This means that a hirer is typically not liable for injuries sustained by an independent contractor or its workers while on the job." (*Gonzalez v. Mathis* (2021) 12 Cal.5th 29, 37-38 (*Gonzalez*), citing *Privette*, *supra*, 5 Cal.4th 689.)

There are circumstances in which the strong presumption of delegation under *Privette* is overcome, for example: (1) when the hirer retains control over any part of the independent contractor's work and affirmatively contributes to the injury (*Hooker v. Department of Transportation* (2002) 27 Cal.4th 198, 210-213); or (2) when the hirer fails to warn of a known concealed

5

hazard (*Kinsman, supra*, 37 Cal.4th at pp. 674-675). (See *Gonzalez, supra,* 12 Cal.5th at pp. 37, 42-43.)

Appellants contend the presumption of *Privette* does not apply here because Wagner failed to meet her initial burden of establishing that she was a "hirer," either directly or indirectly, of PCSI. For support, they rely on *Gordon, supra*, 43 Cal.App.5th 705 and *Ramirez v. PK I Plaza 580 SC LP* (2022) 85 Cal.App.5th 252 (*Ramirez*). But those cases are distinguishable.

*Gordon* involved the question of whether the primary assumption of risk applied where the defendants did not hire or engage the plaintiff. (*Gordon, supra*, 43 Cal.App.5th at p. 708.) It did not involve the *Privette* doctrine. (*Id.* at pp. 716-719.) For example, in *Gordon*, the plaintiff, a professional roofer, was hired by a prospective buyer of a commercial building to inspect the building's roof and to estimate any repair costs. During the inspection, the plaintiff fell 35 feet through a "'camouflaged hole'" in the building's roof and suffered injuries. (*Id.* at pp. 708-709.)

On appeal, the *Gordon* court concluded that the trial court properly refused to instruct on primary assumption of risk because the defendants did not hire or engage the plaintiff. (*Gordon,* 43 Cal.App.5th at pp. 713-716.) It also rejected defendants' contention that *Privette* "supports applying primary assumption of risk." (*Id.* at p. 717.) As the *Gordon* court explained, the defendants did not cite any case describing *Privette* as a form of primary assumption of the risk and the phrase, "primary assumption" is not even in *Privette*, nor does it appear in *Kinsman*. "[T]he two doctrines are distinct." (*Ibid*.)

Our high court explained in *Gonzalez*, "The *Privette* doctrine is concerned with *who owes* a duty of care to ensure workplace safety—the hirer or the independent contractor—

6

under principles of delegation.  [Citation.] The assumption of risk doctrine asks *whether* a defendant owes a duty of care where the plaintiff voluntarily assumes the risks of a dangerous activity or occupation."  (*Gonzalez*, *supra*, 12 Cal.5th at p. 53.)

Here, the trial court found that Wagner "readily meets her initial burden of presenting a valid factual basis of applying the *Privette* doctrine."  In so finding, the trial court rejected appellants' attempt to defeat the applicability of the doctrine by "focusing on the technicality that Defendant was not the one who hired the inspection company but instead it was Defendant's insurance company who hired the inspection company."

This makes practical sense.  By paying her insurance carrier for insurance coverage, Wagner has in essence paid for the inspection.  And by consenting to allow Andrews to enter her property to carry out the contracted inspection, she has delegated to the independent contractor the responsibility for workplace safety.  This falls squarely within the scope of *Privette*'s policy favoring delegation.  Thus, for purposes of analyzing *Privette*, there is no legal distinction between Wagner and her insurance carrier—both are "hirers" within the meaning of the doctrine. (See, e.g., *Collins v. Diamond Generating Corp.* (2024) 107 Cal.App.5th 1162, 1175 [*Privette* "bars liability against not only the hirer, but also any other entities in that 'chain of delegation'"], fn. 6 [disagreeing with *Gordon* and *Ramirez* to the extent those cases suggest *Privette* only applies to direct "hirers"]; *Michael v. Denbeste Transp., Inc.* (2006) 137 Cal.App.4th 1082, 1097 [no legal distinction between a general contractor and landowner who hires independent contractors—both are hirers].)

Appellants reliance on *Ramirez*, *supra*, 85 Cal.App.5th 252 is also unavailing.  In *Ramirez,* the tenant of a shopping center

7

hired a self-employed contractor to remove an exterior sign. In the course of his work, the contractor entered a cupola on the shopping center's roof and fell through. He sued the owner of the shopping center for his injuries. (*Id.* at p. 257.) The *Ramirez* court concluded that *Privette* did not apply because the shopping center owner did not hire the tenant or the contractor to perform the work and therefore did not delegate its responsibility for the roof's condition to either the tenant or the contractor as contemplated by *Privette*. (*Id.* at pp. 257-258, 265-270.)

But this case is factually distinguishable from *Ramirez* because the relationship between the insured and the insurer is greater in scope that that of the landlord-tenant relationship at issue in *Ramirez*. Here, Wagner obtains the benefit of securing or maintaining her insurance coverage by permitting the independent contractor to enter her property and conduct the inspection as required by the homeowners' insurance carrier. Given the policy favoring delegation of responsibility and assignment of liability, it would make little sense to allow liability to be imposed on the homeowner in such a situation. (See *Seabright Ins. Co. v. US Airways, Inc.* (2011) 52 Cal.4th 590, 602.)

The California Association of Realtors, as amicus, urge this court to affirm the judgment in favor of Wagner and to distinguish *Gordon*, *supra*, 43 Cal.App.5th 705. Amicus also asserts public policy arguments in favor of applying *Privette* to all landowners and sellers of residential property as a matter of law. Appellants respond that such arguments and concerns are best made to the Legislature. We agree.

8

Based on this record, we conclude the trial court properly found Wagner met her initial burden of establishing the general application of the *Privette* doctrine.

*Kinsman Exception*

Appellants contend that even if Wagner met her burden of establishing that she was a "hirer" within the meaning of *Privette*, there are still triable issues of fact regarding the *Kinsman* concealed-hazard exception to the *Privette* doctrine that warranted denial of the summary judgment motion.  As we shall explain, this contention is meritless.

One of *Privette's* underpinnings is the availability of workers' compensation benefits to the injured employee.  "'[I]t would be unfair to impose liability on the hiring person when the liability of the contractor, the one primarily responsible for the worker's on-the-job injuries, is limited to providing workers' compensation coverage.'" (*Kinsman, supra,* 37 Cal.4th at p. 669.)

"[W]hen there is a known safety hazard on a hirer's premises that can be addressed through reasonable safety precautions on the part of the independent contractor, . . . the hirer generally delegates the responsibility to take such precautions to the contractor, and is not liable to the contractor's employee if the contractor fails to do so." (*Kinsman*, *supra*, 37 Cal.4th at pp. 673-674.)

The rule is different for concealed hazards.  This is because "[a] landowner cannot effectively delegate to the contractor responsibility for the safety of its employees if it fails to disclose critical information needed to fulfill that responsibility, and therefore the landowner would be liable to the contractor's employee if the employee's injury is attributable to an undisclosed hazard." (*Kinsman*, *supra*, 37 Cal.4th at p. 674.)

As our high court in *Kinsman* explained, "the hirer as landowner may be independently liable to the contractor's employee, . . . if (1) [the landowner] knows or reasonably should know of a concealed, preexisting hazardous condition on its premises; (2) the contractor does not know and could not reasonably ascertain the condition; and (3) the landowner fails to warn the contractor." (*Kinsman*, *supra*, 37 Cal.4th at p. 675, fn. omitted.)

Here, there is no evidence that the steps were a concealed hazard or that Wagner knew or should have known that they were unsafe. Indeed, by Andrews's own admission, the steps were in plain sight, it was his job to be conscientious about the environment, and had he looked down, he likely would not have fallen. Appellants respond that "merely because the railroad tie stairs were visible . . . misses the point." Instead, "[i]t was the very slippery condition of the railroad ties that made them hazardous."

But there is no substantial evidence to support this contention. Appellants speculate that the stairs were wet or that they had moss on them. But as the trial court properly concluded, a triable issue of fact can only be created by a conflict of evidence, not speculation. (Citing *Pipitone v. Williams* (2016) 244 Cal.App.4th 1437, 1453; see also *Aguilar*, *supra*, 25 Cal.4th at p. 864.)

Appellants rely on the deposition testimony of Wagner's gardener that the steps would sometimes get slippery and that Wagner had warned him about it approximately 10 years ago. But even liberally construing this evidence, it does not establish that on the day of the incident the steps were slippery or that Andrews—a professionally trained inspector who was there to

10

look for potentially hazardous conditions—could not have reasonably ascertained the condition of the steps.

Finally, there is no evidence to suggest that Wagner had any reason to warn Andrews about the steps on that day. Given that Wagner was an elderly woman with limited mobility issues who used a walker, Andrews was in a far better position to identify potential hazards and take the necessary safety precautions to avoid any injury. In short, appellants have not established that the concealed-hazard *Kinsman* exception applies.

Because we conclude the trial court properly granted Wagner's motion for summary judgment, Paula's derivative claim for loss of consortium also fails. (See *Blain v. Doctor's Co.* (1990) 222 Cal.App.3d 1048, 1067.)

*Disposition*

The judgment is affirmed. Respondent shall recover costs on appeal.

<u>CERTIFIED FOR PUBLICATION</u>.


YEGAN, Acting P. J.

We concur:


BALTODANO, J.


CODY, J.


11

Rhonda J. McKaig, Judge
Superior Court County of Ventura

_____

Law Offices of Jacob Emrani and John F. Gerard for Plaintiffs and Appellants.

Law Offices of Cleidin Z. Atanous and Cleidin Z. Atanous; The Safarian Firm and Harry A. Safarian, Christina S. Karayan, for Defendant and Respondent.

Brian A. Manson, Neil Kalin, and J. Olivia Van, for California Association of Realtors as Amici Curiae on behalf of Defendant and Respondent.